THE MUNCHAK CORPORATION (DELAWARE) AND RDG CORPORATION, A JOINT VENTURE D/B/A/ THE CAROLINA COUGARS AND THE MUNCHAK CORPORATION (GEORGIA) v. JOE L. CALDWELL

No. 7718SC841

(Filed 18 July 1978)

1. **Pleadings § 33.3— denial of amendment to conform to proof—no implied consent for amendment**

In an action to reform a provision of the contract of a professional basketball player based on an alleged mutual mistake, plaintiffs' motion to amend their complaint to conform to evidence of fraud was properly denied where (1) there was no evidence from which an inference of fraud could be drawn, and (2) defendant's failure to object to the evidence plaintiffs contend supports the issue of fraud did not amount to his implied consent to amend the pleadings to allow the issue of fraud since the evidence went to the issue of mutual mistake which was raised by the pleadings. G.S. 1A-1, Rule 15(b).

2. **Contracts § 26; Reformation of Instruments § 6— reformation of contract— testimony as to "agreement"**

In an action to reform a provision of a written contract for mutual mistake, the trial court did not err in refusing to allow plaintiffs' witnesses to testify that an "agreement" other than the written contract had been reached and in instructing the jury to consider the word "agreement" only as it related to preparation of a final draft for adoption of the parties since whether an agreement was reached was an ultimate issue to be determined by the court and jury.

3. **Appeal and Error § 49— exclusion of evidence—similar evidence admitted—harmless error**

In an action to reform the pension provision in the contract of a professional basketball player, error, if any, in the exclusion of the notes of defendant's negotiating agent purportedly showing that defendant's pension was to be equivalent to the NBA pension plan then in effect was harmless where the same evidence was presented to the jury in the deposition of another witness.

APPEAL by plaintiffs from *Kivett, Judge.* Judgment entered 14 January 1977, in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 June 1978.

On 30 October 1970, Southern Sports Corporation, predecessor in interest to the plaintiffs, and defendant Caldwell entered into a contract whereby Caldwell agreed to provide professional services as a basketball player for the Carolina Cougars of the American Basketball Association (ABA). The contract provided in part:

> "5. At the time of the rendering of services to Club by Player, Player shall be eligible for and shall receive entitlement to pension benefits from an insurance carrier acceptable to Player at least equal to the following:

> "(a) The sum of Six Hundred Dollars ($600.00) per month for each year of services as a professional basketball player, which sum shall be paid at age fifty-five (55) . . . ."

In the spring of 1972, a dispute arose regarding the above quoted portion of the contract. Plaintiffs contended that the intention of the parties to the contract was that Caldwell be provided a retirement pension equivalent to that of the National Basketball Association (NBA). The NBA pension then in effect was $60.00 per month for each year a player performed basketball services as a professional player. Caldwell contended that the contract provision expressed the agreement of the parties. After attempts to resolve the dispute failed, plaintiffs filed this action to reform the contract.

At trial, plaintiffs put on evidence tending to show that in the fall of 1970 plaintiffs' predecessor in interest wanted to sign a "superstar" with the Cougar team. During the 1969-70 basketball season, Caldwell had been an outstanding all-star player for the Atlanta Hawks of the NBA. Robert Gorham, one of the principal owners of Southern Sports, initiated efforts to induce Caldwell to play for the Carolina Cougars during the 1970-71 season. Gorham testified concerning the intricate negotiations with Caldwell and Marshall Boyar, Caldwell's friend and agent. The negotiations were conducted in secrecy due to the fact that the Atlanta team had an option to extend Caldwell's contract and had made attempts to sign Caldwell for the next year. Despite his extensive

note-taking during the negotiations, Gorham testified that he had no notation at any point concerning a pension for Caldwell.

Charles Dameron, attorney for Southern Sports who participated in drafting the contract signed by Southern Sports and defendant, testified that the consensus during the negotiations was to equalize Caldwell's pension with that of the NBA. Dameron also stated that the language of clause 5 of the contract was copied verbatim from the contract of another player, Zelmo Beatty. He explained the alleged error in clause 5 of the contract in question by pointing out that the parties anticipated that defendant would play ten years and would, therefore, receive a total of $600 per month.

Defendant put on evidence tending to show that the pension clause was a major inducement to his entering into the contract. Defendant himself pointed out that for two basketball seasons, 1970-71 and 1971-72, defendant and his representatives made efforts to have the pension plan funded. It was not until 15 May 1972, that Jerome Ehrlich, an attorney for defendant, was informed by plaintiffs that they considered the $600 per month figure to be a typographical error.

At the close of all the evidence, the trial judge gave his charge to the jury and submitted the following issues. The jury's verdict is noted in parentheses.

"ISSUES

"1. Was the following underlined language included in paragraph 5(a) of the contract included by mutual mistake of the parties?

'(a) The sum of Six Hundred Dollars ($600.00) per month for each year of services as a professional basketball player, which sum shall be paid at age fifty-five (55)'?

"ANSWER: (No.)

"2. Was the above paragraph as written in the contract executed by the parties on October 30, 1970, in accord with the intention of Joe L. Caldwell at the time he signed the contract?

"ANSWER: (Yes)

"3. Was the above paragraph as written in the contract executed by the parties on October 30, 1970 in accord with the intention of Southern Sports Corporation d/b/a The Carolina Cougars at the time its representative, Carl Scheer, signed the contract?

"ANSWER: (Yes)"

From this verdict and the court's judgment, plaintiffs appeal.

*Forman and Zuckerman, by William Zuckerman, and Powell, Goldstein, Frazier & Murphy, for plaintiff appellants.*

*Smith, Moore, Smith, Schell & Hunter, by Bynum M. Hunter and James L. Gale, for defendant appellee.*

ARNOLD, Judge.

I.

[1] The plaintiffs' first contention is that the trial court erred (1) in denying plaintiffs' motion to amend their complaint to allege fraud, (2) in instructing the jury that fraud was not an issue, and (3) in refusing to instruct the jury that fraud of an agent is chargeable to a principal with knowledge.

Plaintiffs made their motion to amend pursuant to G.S. 1A-1, Rule 15 which reads in pertinent part:

"(a) *Amendments.* — A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

"(b) *Amendments to conform to the evidence.* — When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues

may be made upon motion of any party at any time, either before or after judgment, but failure so to amend does not affect the result of the trial of these issues."

Although it is difficult to determine from the record exactly when plaintiffs made their motion to amend, it is clear that the motion came at some point during the trial. Under Rule 15(a), the ruling on such a motion is left to the discretion of the trial judge with the mandate, however, that where justice so requires, leave to amend *shall* be freely granted. Plaintiffs do not argue that the trial judge abused his discretion in refusing to grant leave. Instead they argue that the amendment to allege fraud should have been allowed in order that the amended pleadings would conform to the evidence at trial. See Rule 15(b). We cannot find, however, that the pleadings were amended by the doctrine of implied consent. In *Eudy v. Eudy*, 288 N.C. 71, 215 S.E. 2d 782 (1975), the Supreme Court, in applying Rule 15(b), accepted the analysis of the Sixth Circuit:

> " 'We think it clear that if a theory of recovery is tried fully by the parties, the court may base its decision on that theory and may deem the pleadings amended accordingly, even though the theory was not set forth in the pleadings or in the pretrial order. *See Wallin v. Fuller*, 476 F. 2d 1204, (5th Cir. 1973); *Monod v. Futura, Inc.*, 415 F. 2d 1170 (10th Cir. 1969); *Dering v. Williams*, 378 F. 2d 417 (9th Cir. 1967); Fed. R. Civ. P. 15(b). However, the implication of Rule 15(b) and of our decision in *Jackson v. Crockarell* [475 F. 2d 746 (6th Cir.)] is that a trial court may not base its decision upon an issue that was tried inadvertently. Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue. *See Bettes v. Stonewall Ins. Co.*, 480 F. 2d 92 (5th Cir. 1973); *Standard Title Ins. Co. v. Roberts*, 349 F. 2d 613, 620 (8th Cir. 1965); *Niedland v. United States*, 338 F. 2d 254, 258 (3d Cir. 1964).' "
> *Id.* at 77, 215 S.E. 2d at 786-87, quoting *MBI Motor Co., Inc. v. Lotus/East, Inc.*, 506 F. 2d 709 (6th Cir. 1974).

The evidence which plaintiffs contend should have led to an amendment under Rule 15(b), included testimony of Ehrlich,

Boyar and Caldwell that the erroneous provision in the contract was known to them on 28 October 1970, two days before the contract was signed. Moreover, according to plaintiffs' position, despite an "ambiguity" in subparagraph (c) of Paragraph 5, Ehrlich, Boyar and Caldwell elected not to mention the "ambiguity" for fear of drawing attention to the erroneous pension provision.

First of all, we disagree with plaintiffs' interpretation of the testimony they cite. Ehrlich, a witness of plaintiffs, testified:

". . . I pointed out that I didn't like Paragraph (c) because I thought it was ambiguous and should be clarified, and I explained it to Mr. Caldwell and Mr. Boyar, and Mr. Caldwell and Boyar both read it over and Boyar ventured the opinion that we should leave the paragraph alone because it was an item of great consideration and that if we tried to delineate or carefully define subparagraph (c), they might think the rest of the paragraph was subject to renegotiation, and he did not want to renegotiate it."

In addition, both Boyar and Caldwell testified that they did not want to renegotiate Paragraph 5 and, therefore, elected not to call attention to subparagraph (c). We see no evidence of fraud in this record, and no evidence from which an inference of fraud can be drawn.

Secondly, we believe that the evidence cited by plaintiffs as supporting the issue of fraud went to the issue of mutual mistake which was properly raised by the pleadings. Defendant, under the reasoning of the *Eudy* case, was not required to object to evidence properly raised by the pleadings. His failure to do so, therefore, did not amount to his implied consent to amend the pleadings to allow the issue of fraud.

It is our conclusion that the motion to amend the pleadings was properly denied, and we find no error in the trial court's failure to charge the jury on the issue of fraud.

II.

[2] Plaintiffs' next contention is that the trial court erred in striking the testimony of plaintiffs' witnesses Scheer and Gorham, and in instructing the jury on the interpretation of the word

"agreement" as contained in testimony by deposition of Kenneth Goldman. In essence, the trial court refused to allow testimony by three of plaintiffs' witnesses that an agreement — other than the written contract — had been reached; the court further instructed the jury at one point during the presentation of evidence that it would consider the word "agreement" only as it was used pertaining to preparation of a final draft for adoption by the parties. It is plaintiffs' argument that since plaintiffs must prove the terms of an oral agreement as one prerequisite for reformation, testimony that an agreement, or meeting of the minds, was reached is competent. We cannot agree with this argument. Whether an agreement was reached is a mixed question of law and fact. In the instant case, this question was an ultimate issue to be determined by the court and the jury, not a conclusion to be drawn by a witness. *See* 1 Stansbury § 130 (Brandis Rev. Ed. 1973). *See also, Moye v. Eure*, 21 N.C. App. 261, 204 S.E. 2d 221, *cert. denied* 285 N.C. 590, 205 S.E. 2d 723 (1974). We also point out that plaintiffs were in no way restricted in testifying as to the details of the negotiations. Thereafter it was for the jury to determine whether an agreement was reached.

Moreover, even if it be assumed that the court's instruction to the jury to consider the word "agreement" only as it related to preparation of a final draft for adoption of the parties was error, any error was harmless in view of the court's final charge to the jury:

"A court has the power to reform an instrument for the mutual mistake of the parties in order to make the instrument express their true intent, but I further instruct you that a court may not reform an instrument or one of its provisions unless the mistake is mutual. Where the parties agree as to the provisions which should be inserted in an instrument, but through inadvertence or mistake of the draftsman, the instrument fails to express the intent of the parties, the instrument or a provision therein may be reformed, but an instrument or one of its provisions may not be reformed for inadvertence of the draftsman if the instrument as drawn is in accord with the understanding of one of the parties, the remedy of reformation being available only in instances of mutual mistake."

## III.

**[3]** Finally, plaintiffs assign error to the ruling by the court which disallowed the introduction of plaintiffs' Exhibit No. 7 into evidence. The result of this ruling, in plaintiffs' view, deprived the jury from considering notes made by Caldwell's own negotiating agent, Kenneth Goldman, which notes, according to plaintiffs, reflect that Caldwell's pension was to be equivalent to the NBA pension plan then in effect.

The handwritten notes contained in the exhibit are, for the most part, illegible. Nor is there any date on the notes. Both sides present authority relating to the introduction of business records made at or near the time of the transaction and authenticated by a witness who is familiar with such records and with the method by which the records were made. Defendant's position is that no basis was shown from which to infer that Exhibit No. 7 actually was made at or near the time of the transaction.

We conclude that it is unnecessary to decide whether the exhibit should have been admitted as a business record. Any error in the exclusion of the exhibit was harmless to plaintiffs. The very same evidence which plaintiffs contend the exhibit reflected, *i.e.*, that Caldwell was to receive the equivalent pension plan as was in effect in the NBA, was contained in the deposition of Kenneth Goldman which plaintiffs presented to the jury. *See Rome v. Murphy*, 250 N.C. 627, 109 S.E. 2d 474 (1959).

We can find no error sufficiently prejudicial to warrant a new trial.

No error.

Judges BRITT and MORRIS concur.