UNITED LABORATORIES, INC., a Delaware Corporation, Plaintiff v. WILLIAM DOUGLAS KUYKENDALL and SHARE CORPORATION, a Wisconsin Corporation, Defendants

No. 9028SC97

(Filed 16 April 1991)

1. **Appeal and Error § 49 (NCI3d)— covenant not to compete— objection to exclusion of evidence— similar evidence already admitted**

   In an action for breach of covenant not to compete, the trial court's error, if any, in excluding a newsletter relating to defendant employer's policy of defending employees in suits brought by the employees' former employers was harmless, since other similar evidence was before the jury.

   **Am Jur 2d, Appeal and Error §§ 800, 802.**

2. **Damages § 161 (NCI4th)— covenant not to compete— mitigation of damages—instruction not required**

   The trial court did not err in refusing to instruct the jury in an action for tortious interference with a covenant not to compete and unfair trade practices that plaintiff had to mitigate its damages where defendant failed to meet its burden of proving that plaintiff did not act reasonably.

   **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 542 et seq.**

3. **Master and Servant § 11.1 (NCI3d); Unfair Competition § 1 (NCI3d)— covenant not to compete—inducement of employee to breach—unfair trade practice**

   The trial court did not err in concluding that defendant employer engaged in an unfair trade practice by paying legal fees and costs to induce defendant employee to breach his covenant not to compete with plaintiff, his former employer, by offering to subsidize the income, draw, and expenses of defendant employee in the event of an injunction, and by using defendant employee's customer information to divert accounts from plaintiff.

   **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 542 et seq.**

UNITED LABORATORIES, INC. v. KUYKENDALL

[102 N.C. App. 484 (1991)]

4. **Election of Remedies § 2 (NCI3d) — interference with contract — unfair trade practices — election properly allowed**

The trial court did not err in allowing plaintiff to elect between the punitive damages awarded on its claim for tortious interference with a contract and trebled damages for unfair trade practices.

**Am Jur 2d, Election of Remedies §§ 8 et seq.; Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 360, 362.**

5. **Election of Remedies § 4 (NCI3d); Costs § 37 (NCI4th) — tortious interference with contract — unfair trade practices — election between punitive damages and trebled compensatory damages — attorney fees for unfair trade practices**

Plaintiff's election of punitive damages for tortious interference with a covenant not to compete rather than trebled damages for unfair trade practices under N.C.G.S. § 75-1 did not constitute an election against the Chapter 75 award in its entirety so as to prohibit the trial court from awarding attorney fees to plaintiff under N.C.G.S. § 75-16.1 in the unfair trade practices action.

**Am Jur 2d, Election of Remedies §§ 8 et seq.; Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 360, 362.**

6. **Costs § 37 (NCI4th) — decision to award attorney fees proper — insufficient findings in award**

In an action for unfair trade practices arising out of tortious interference with a covenant not to compete, the trial court did not abuse its discretion in its decision to award attorney fees, since there was ample evidence that defendant wilfully engaged in the acts and practices found by the jury; however, the trial court erred in failing to include in its order findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 365.**

APPEAL by defendant Share Corporation from judgment entered 19 July 1989 by *Judge Hollis M. Owens* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 15 November 1990.

UNITED LABORATORIES, INC. v. KUYKENDALL

[102 N.C. App. 484 (1991)]

This is the second appeal in this matter. Plaintiff United Laboratories, Inc. (hereinafter United) and defendant Share Corporation (hereinafter Share) are in the business of selling specialty chemical products to commercial and municipal accounts. United and Share compete directly against each other. United hired defendant William Douglas Kuykendall in 1971 to sell chemical products. During his employment, Kuykendall signed a covenant not to call upon any of United's customers for eighteen months in the event he left United's employment. In 1985, Kuykendall responded to a Share advertisement for chemical sales representatives. During Kuykendall's interview with Vern Palmer, Share's Vice President of Sales, Kuykendall and Palmer allegedly discussed Kuykendall's covenant not to compete with United. Palmer advised Kuykendall that in the event United brought legal action against Kuykendall for violation of the covenant, Share would pay the legal costs associated with defending the lawsuit. Subsequently, Kuykendall agreed to work for Share. After beginning work with Share, Kuykendall called upon former customers of his while he was employed with United and sold within the restricted sales territory allegedly causing plaintiff to lose sales with its customers.

On 26 November 1985, plaintiff filed its original action against defendant Share and defendant Kuykendall seeking an injunction and damages based on Kuykendall's alleged breach of restrictive covenants, Share's interference resulting from the two restrictive covenants and Kuykendall's and Share's unfair trade practices under G.S. Chapter 75. On 31 December 1985, the trial court entered a preliminary injunction enjoining Kuykendall from "soliciting, calling upon or contacting" customers of plaintiff that Kuykendall had previously contacted on plaintiff's behalf and from disclosing United's confidential information to Share. The case went to trial on 23 June 1986. The trial court directed a verdict against defendants on the issue of liability and submitted the issue of damages to the jury. The jury returned a judgment in the amount of $38,738.89 which was trebled upon the court's finding of liability pursuant to G.S. 75-1.1. The trial court awarded attorneys' fees and costs for $47,522.23 pursuant to G.S. 75-16.1. The trial court also entered a permanent injunction enjoining Kuykendall from selling, directly or indirectly, Share products within United's territory for the remainder of his eighteen month covenant period and enjoining Share from utilizing, directly or indirectly, any confidential information obtained from Kuykendall. Defendants appealed from the trial court's judgment.

## UNITED LABORATORIES, INC. v. KUYKENDALL

[102 N.C. App. 484 (1991)]

This court reversed that judgment in *United Laboratories, Inc. v. Kuykendall*, 87 N.C. App. 296, 361 S.E.2d 292 (1987), holding that the two restrictive covenants executed by Kuykendall were unenforceable and accordingly there could be no interference. This court then ordered a directed verdict in favor of Share on the interference claim, held that the trial court improperly directed a verdict as to the Chapter 75 claims and remanded those claims for a new trial. Plaintiff then appealed to the North Carolina Supreme Court who affirmed the Court of Appeals in part and reversed it in part holding that the restrictive covenants were enforceable. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 (1988). The Court stated that it could not determine from the verdict which part of the damages was attributable to the breach of contract claim. Accordingly, the Supreme Court remanded that matter for trial as to the damages on the breach of contract claim against Kuykendall. The Supreme Court remanded the interference claim for a new trial as to both liability and damages. The unfair trade practice claim was also remanded for trial on the issues of liability and damages.

Prior to the second trial, Share offered to settle the case for $20,000. United rejected this offer and countered that it would settle the case if Share entered into an eternal consent decree whereby Share would not solicit or hire United's sales representatives in violation of their contracts with United and paid $225,000. Share rejected the counteroffer.

This matter went to trial again on 22 May 1989. The jury returned a verdict in favor of plaintiff against Kuykendall on damages for breach of contract in the amount of $11,700; they found liability and damages against Share on the interference claim in the amount of $1.00 in nominal damages and $100,000 in punitive damages and made findings of facts and found damages on the unfair trade practice claim in the amount of $15,000 compensatory damages which United conceded was duplicative of the compensatory damages awarded for the breach of contract claim. At a subsequent hearing, the trial court awarded legal fees to United in the amount of $250,000. The trial court then entered judgment against Kuykendall on the breach of contract claim in the amount of $11,700; against Share on the interference claim in the amount of $1.00 in nominal damages and $100,000 in punitive damages; and against Share on the unfair trade practice claim in the amount of $45,000 which was $15,000 in compensatory damages trebled with $250,000 in attorneys' fees.

United elected the $1.00 nominal damages and $100,000 punitive damages of the interference claim and $15,000 untrebled compensatory damages and $250,000 attorneys' fees in the unfair trade practices claim. Share appeals.

*Petree, Stockton & Robinson, by Jackson N. Steele and Schwartz & Freeman by Paul G. Simon and Jamie A. Maloney, for plaintiff-appellee.*

*Brock, Drye & Aceto, P.A., by Michael W. Drye, for defendant-appellant.*

EAGLES, Judge.

[1] First, Share assigns as error the trial court's exclusion from evidence a newsletter which Share contends was relevant to its intent. Without citing any authority, Share argues that it was unfair for the trial court to hold that plaintiff could introduce either the entire newsletter or none of it and then later refuse the same option to Share on the grounds that the document was irrelevant. Share argues that this was "the height of unfairness."

We hold that it is unnecessary to decide whether the trial court erred in refusing to admit the newsletter. The substance of the newsletter which related to Share's policy of defending employees in suits brought by the employees' former employers was admitted into evidence when portions of a transcript from the deposition of Share's General Counsel, Stephen C. Raymonds, were read to the jury. Also the jury heard similar testimony from portions of a transcript from the deposition of Share's Chairman of the Board and Director, Paul desJardins. During his deposition, Mr. desJardins stated that he did not know whether an offer was made to Kuykendall to pay for legal fees and expenses incurred during litigation but stated that "we [Share] will defend any of our employees whether they be salespeople or not, or what, in any litigation of this type." He further replied "yes" to a question concerning whether it was the custom and practice of Share to inform potential salespersons that it would pay legal fees and expenses prior to their being employed. While the newsletter contained details concerning the litigation of another suit, it addressed the policy of Share in defending its employees so that the threat of litigation would not deter a potential employee from leaving the employment of one of Share's competitors. Also, in a letter dated 15 October 1985, Stephen Raymonds told David Brown, General

Counsel for United, that "[a]s you probably know, Share has a history of fighting for the right of the salesperson to be free to choose for whom he or she wishes to work." Where the same evidence or testimony is introduced during the trial, the exclusion of even relevant evidence is harmless error. *Munchak Corp. v. Caldwell*, 37 N.C. App. 240, 247, 246 S.E.2d 13, *disc. rev. denied*, 295 N.C. 647, 248 S.E.2d 252 (1978). Accordingly, this assignment of error is overruled.

[2] Second, Share assigns as error the trial court's refusal to instruct the jury that United had to mitigate its damages. Share contends that had the trial court instructed the jury on this issue, "the jury would have returned a verdict of zero damages or at least of smaller damages as to the unfair trade practice claims." We disagree.

> "The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had. *Johnson v. R.R.*, 184 N.C. 101, 113 S.E. 606. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable. 22 Am. Jur. 2d Damages §§ 30-32 (1965)."

*Watson v. Storie*, 60 N.C. App. 736, 739, 300 S.E.2d 55, 58 (1983), *appeal after remand*, 70 N.C. App. 327, 318 S.E.2d 910 (1984), quoting, *Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 73-4 (1968). Where the duty to minimize damages applies, the burden is on the party who breached the contract to show matters in mitigation. *Andrews & Knowles Produce Co. v. Currin*, 243 N.C. 131, 90 S.E.2d 228 (1955). "A trial judge is required to instruct a jury on the law arising from the evidence presented." *Lusk v. Case*, 94 N.C. App. 215, 216, 379 S.E.2d 651, 652 (1989). "When a defendant submits a request for specific instructions which are correct and are supported by the evidence, the trial court commits reversible error in failing to submit the substance of those instructions to the jury." *Alston v. Monk*, 92 N.C. App. 59, 66, 373 S.E.2d 463, 468 (1988), *disc. rev. denied*, 324 N.C. 246, 378 S.E.2d 420 (1989).

> Here, the evidence does not support the instruction on mitigation of damages. No testimony indicates that plaintiff failed to

mitigate its damages or act other than reasonably. During trial, Eric Frazer, Vice President of Sales for United, testified that after Kuykendall left, they "started to call all of the accounts on the telephone and tried to assure them that United would still service their needs, and tried to maintain that relationship or contact with the customer." Frazer further testified that they "then took the accounts and [they] divided them up between three of our top sales representatives in those areas, and our most experienced sales representatives, and had them call on the accounts and try to service the accounts as well." Kuykendall even testified that he had approached United about returning to his former job, which can be attributed to the delay, if any, on United's part in reassigning the accounts. While we note that Share presented testimony from one of United's former customers stating that he did not remember being called on by United after Kuykendall left the company, we hold that Share had not met its burden of proving that United did not act reasonably in seeking to reduce its loss. Since defendant has failed to meet its burden of proving that plaintiff did not act reasonably in minimizing its loss, we find it unnecessary to address whether the instruction is relevant as a matter of law to the unfair trade practice claim. Accordingly, this assignment of error is overruled.

[3]  Third, Share contends that the trial court erred in concluding that Share engaged in an unfair trade practice by paying legal fees and draws and by using employees' customer information. We disagree.

> The overall purpose and legislative intent of G.S. 75-1.1 is "to declare deceptive acts or practices in the conduct of any trade or commerce in North Carolina unlawful, to provide civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State, and to enable a person injured by deceptive acts or practices to recover treble damages from a wrongdoer." Furthermore, "[t]he statutes do not protect only individual consumers, but serve to protect business persons as well." Thus, disputes between competitors in business fall under the province of the statute. Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has on the marketplace. Based upon the jury's findings of fact, the court must determine as a mat-

ter of law whether a defendant's conduct violates this section. [Citations omitted.]

*McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 683-84, *disc. rev. denied*, 323 N.C. 476, 373 S.E.2d 864 (1988).

No precise definition of "unfair methods of competition" as used in this section exists.

"Unfair competition has been referred to in terms of conduct 'which a court of equity would consider unfair.' (Citation omitted.) Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others."

*Id.*, 370 S.E.2d at 684, quoting, *Harrington Manufacturing Co. v. Powell Manufacturing Co.*, 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 (1978), *cert. denied*, 296 N.C. 411, 251 S.E.2d 469, *disc. rev. denied*, 296 N.C. 411, 251 S.E.2d 469 (1979). "Furthermore, '[t]he concept of "unfairness" is broader than and includes the concept of "deception."' " *Id.*, quoting, *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981), quoting, *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980). "Unfair methods of competition have been found by this Court in actions involving competitive business relationships." *Id.* at 19, 370 S.E.2d at 684. "The act is directed toward maintaining ethical standards in dealings between persons engaged in business and to promote good faith at all levels of commerce. Unfair methods of competition [. . .] would not promote good faith at any level of commerce." *Id.* at 20-21, 370 S.E.2d at 685 (citations omitted).

Here, in its verdict, the jury specifically found that Share did the following: "(a) Offer[ed] to pay legal fees and costs to induce Kuykendall, in breach of his covenant not to compete, to attempt to divert to Share, unfairly, United's accounts; (b) Induce[ed] Kuykendall to use his relationship with United's accounts and knowledge of confidential business information to attempt to divert to Share, unfairly, United's accounts; (c) Offer[ed] to subsidize the income, draw and expenses of Kuykendall in the event of an injunction, to induce Kuykendall, to divert to Share, unfairly, United's accounts; and (d) As a matter of routine practice, offer[ed] to pay

legal fees and costs to induce experienced chemical sales represent-
atives, in breach of the salesmen's covenant not to compete, to
attempt to divert to Share, unfairly, the former employer's ac-
counts." The jury also found that Share's conduct was in commerce
or affected commerce. We agree with the trial court's finding that
Share's conduct violated G.S. Chapter 75. These facts constituted
unfair methods of competition and did not promote good faith deal-
ings between Share and United. Accordingly, the trial court did
not err in its judgment.

[4] Fourth, Share contends that the trial court erred in misapply-
ing the doctrine of election of remedies. Share argues that when
United conceded that it was not entitled to both punitive damages
and trebled damages, "United actually . . . conced[ed] that it had
to elect between its interference claim and its unfair trade practices
claim." Share contends that the trial court erred in allowing United
to elect between the punitive damages awarded on its interference
claim and the trebled portion of its unfair trade practices claim.
We disagree.

"Plaintiffs may in proper cases elect to recover either punitive
damages under a common law claim or treble damages under N.C.G.S.
§ 75-16, but they may not recover both." *Ellis v. Northern Star
Co.*, 326 N.C. 219, 227, 388 S.E.2d 127, 132, *r'hrg denied*, 326 N.C.
488, 392 S.E.2d 89 (1990). In *Ellis*, the libel and unfair and deceptive
trade practice claim arose from the same letter. There the jury
awarded plaintiff, Ellis Brokerage Company, actual damages in the
amount of $32,500 which pursuant to G.S. 75-16 would be trebled
to $97,500 and punitive damages in the amount of $12,500 for libel.
The *Ellis* court stated that on remand, the trial court had to allow
plaintiff to elect its remedy: "either a total of $45,000 for the com-
bined libel award; or a total of $97,500 under N.C.G.S. § 75-16."
*Id.*

Here, under the rationale of *Ellis, supra*, the trial court prop-
erly allowed the election of damages from the allocated award.
Plaintiffs here could have elected to recover the trebled $15,000
compensatory award ($45,000) for defendants' violation of G.S. 75-1.1
and recovered nominal damages of $1.00 for the tortious inter-
ference claim or plaintiffs could have elected to take the nominal
and punitive damages awarded for the tortious interference claim
and the compensatory damages awarded for the violation of G.S.
75-1.1. Here plaintiff chose the latter.

UNITED LABORATORIES, INC. v. KUYKENDALL

[102 N.C. App. 484 (1991)]

**[5]** Share also contends that by electing the complete award of damages on the tortious interference claim, plaintiff elected against the Chapter 75 award in its entirety and is not entitled to attorneys' fees. Contrary to plaintiff's assertion, the law in this State does not hold that a plaintiff must elect against a Chapter 75 violation in its entirety. It merely holds that plaintiff must elect between punitive damages and compensatory damages that are *trebled* pursuant to G.S. 75-16. *See HAJMM Co. v. House of Raeford Farms*, 94 N.C. App. 1, 379 S.E.2d 868, *rev. on additional issues allowed*, 325 N.C. 271, 382 S.E.2d 439 (1989). *See also Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 333 S.E.2d 299 (1985); *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 344 S.E.2d 297, *disc. rev. denied*, 318 N.C. 283, 347 S.E.2d 464 (1986); *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981); *Jennings Glass v. Brummer*, 88 N.C. App. 44, 362 S.E.2d 578 (1987), *disc. rev. denied*, 321 N.C. 473, 364 S.E.2d 921 (1988).

In *HAJMM Co., supra*, this court stated that

[i]f the trial court finds that defendants engaged in an unfair or deceptive trade practice, plaintiff is entitled to have its actual damages trebled and may be entitled to attorney fees in the trial court's discretion, if the court finds that defendants' act or practice was willful and their refusal to resolve the matter was unwarranted. N.C. Gen. Stat. §§ 75-16 and 75-16.1 (1988). Plaintiff would then elect to recover either punitive damages or treble damages.

94 N.C. App. at 15, 379 S.E.2d at 876-77. In *Pinehurst v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 338 S.E.2d 918, *disc. rev. denied and writ of supersedeas and temporary stay denied*, 316 N.C. 378, 342 S.E.2d 896 (1986), this court upheld the trial court's award of attorneys' fees under G.S. 75-16.1 even where plaintiffs had offered no proof on the monetary value of their damages. The decision to award attorneys' fees is within the sole discretion of the trial court. Here, since Share did violate G.S. 75-1.1, we find no abuse of discretion.

**[6]** Fifth, Share contends that the trial court erred in awarding excessive attorneys' fees with no findings under G.S. 75-1.1. Share argues that the trial court erred in making a "full award of attorneys' fees for the first trial and the two appeals despite the two reversals and the need for a second trial." Share contends that the trial court made its award without making any findings

as to the "reasonableness of the fees, the necessity for all of the hours, the quality of the services, or anything else." Share further contends that the trial court erred in not reducing plaintiff's request by allegedly unauthorized costs. We agree.

G.S. 75-16.1 provides that

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
>
> (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

> One purpose for the statute authorizing attorneys' fees is to encourage individuals to bring valid actions to enforce the statute by making such actions economically feasible. Whether to award or deny these fees is within the sound discretion of the trial judge. Once the court decides to award attorneys' fees, however, it must award reasonable attorneys' fees. Furthermore, in order for the appellate court to determine if the statutory award of attorneys' fees is reasonable, the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney.

*Cotton v. Stanley*, 94 N.C. App. 367, 369, 380 S.E.2d 419, 421 (1989) (citations omitted). *But c.f., McDonald v. Scarboro*, 91 N.C. App. 13, 370 S.E.2d 680 (1988).

In the instant case, during a hearing concerning whether facts found by the jury in its verdict constituted unfair and deceptive trade practices and what attorneys' fees, if any, plaintiff was entitled to, the trial court made the appropriate statutory findings justifying plaintiff's entitlement to attorneys' fees. First, there is ample record evidence that Share wilfully engaged in the acts and practices found by the jury. Share's policy of defending its

employees in suits resulting from the breach of covenants not to compete and its active encouragement of its employees to violate the covenants under the belief that the covenants were not enforceable is sufficient evidence on the wilfulness of Share's violation. Secondly, there is record evidence that there was unwarranted refusal on the part of Share to settle. Prior to the second trial, Share made an offer of $20,000 to settle this matter. After United demanded $225,000 and an eternal consent agreement, Share did not make a counteroffer. In view of the jury's award, Share's attempt at settling this matter was not realistic. After careful review of the record, we find that the trial court did not abuse its discretion in its decision to award attorneys' fees. However, the trial court did not include in its order findings of fact "as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." 94 N.C. App. at 369, 380 S.E.2d at 421. Without these factual findings, we are unable to make a determination as to the reasonableness of the trial court's award. We also note that plaintiff's attorneys are entitled to fees for post-trial motions and this appeal.

Share also contends that the trial court erred in making its finding that there had been an unwarranted refusal by Share to pay the unfair trade practice claim. For the reasons stated above, this assignment of error is overruled.

Share next contends that the trial court erred in admitting an affidavit on the issues of whether Share's conduct constituted a wilful unfair trade practice. We disagree.

On these facts, we find it unnecessary to determine the admissibility of the affidavit. "In a trial by the court sitting as finder of fact, we presume that the trial judge disregards incompetent evidence. On appeal, it must be shown that the trial judge was affirmatively influenced by the incompetent matter to justify a finding of prejudicial error." *Spencer v. Spencer*, 70 N.C. App. 159, 167, 319 S.E.2d 636, 643 (1984). Here defendant has failed to rebut that presumption. Accordingly, this assignment of error is overruled.

In summary, we find no error in the trial below with the exception of the trial court's award of attorneys' fees. Accordingly, we remand this cause for entry of findings of fact consistent with this opinion on the attorneys' fee award including an award of attorneys' fees for post-trial motions and this appeal.

Affirmed in part; reversed and remanded in part.

Judges ARNOLD and PARKER concur.