LUTHER T. BOYKIN, Administrator of the ESTATE OF DORIS PRIDGEN BOYKIN, Plaintiff v. IPBI KIM; ASSOCIATED ALLERGY CENTER, INC., Defendants

No. COA05-102

(Filed 1 November 2005)

**1. Evidence— cross-examination not allowed—other testimony—harmless error**

Any error in not allowing cross-examination of plaintiff's expert in a medical malpractice action as to whether a former codefendant had met the standard of care was harmless where several other experts gave equivalent testimony.

**2. Medical Malpractice— insulating negligence—instruction not given**

The trial judge did not err by failing to instruct the jury on insulating negligence where that theory was not pled and it was not evident from the record that both parties understood the issue to be tried by implied consent.

**3. Medical Malpractice— instructions—proximate cause and joint liability—not misleading in context**

The jury was not misled in a medical malpractice action by instructions on proximate cause and joint and several liability. All of the instructions came directly from the North Carolina Pattern Jury Instructions and it cannot be shown that the instructions, in context, were misleading.

**4. Judgments— prejudgment interest—awarded before settlement setoff**

Prejudgment interest is to be awarded before the set-off for a settlement amount; assuming preservation of the issue for appeal, there was no error in a medical malpractice action in the assignment of interest and costs between two doctors, one of whom had settled earlier. It would be contrary to the plain meaning of N.C.G.S. § 1B-4 to allow the settling party to be liable beyond the consideration in the release.

Appeal by defendants from judgment entered 7 June 2004 and order entered 28 June 2004 by Judge Gary L. Locklear in Cumberland County Superior Court. Heard in the Court of Appeals 21 September 2005.

*The McLeod Law Firm, P.A., by Joe McLeod and William W. Aycock, Jr., for plaintiff appellee.*

*Walker, Clark, Allen, Grice & Ammons, L.L.P., by Jerry A. Allen, Jr., and O. Drew Grice, Jr., for defendant appellants.*

McCULLOUGH, Judge.

Defendants Dr. Ipbi Kim and Associated Allergy Center (Dr. Kim) appeal from judgment entered 7 June 2004 and order entered 28 June 2004 by Judge Gary L. Locklear in Cumberland County Superior Court. We find no error.

## FACTS

This is a wrongful death action based upon alleged medical malpractice brought by the administrator of the estate of Doris Boykin ("the estate") against Dr. Kim, Associated Allergy Center, Inc., Dr. Wilburn and Caromed Family Practice, P.A. On 8 June 2004 the estate took a voluntary dismissal with prejudice of their claims against defendants Dr. Wilburn and the Caromed Family Practice (Dr. Wilburn). The trial against the remaining defendants commenced on 3 May 2004. On 12 May 2004 the jury returned a verdict in plaintiff's favor.

Doris Boykin (decedent) began having pulmonary problems in 2001 and sought treatment from her general family practitioner, Dr. Clinton Wilburn. Dr. Wilburn initially diagnosed decedent with bronchitis, but when her condition did not improve she sought treatment from an Ear, Nose and Throat specialist, Dr. Kim. In the initial

visit to see Dr. Kim, decedent complained of several symptoms including hearing loss, nasal problems and a sore throat with hoarseness. Dr. Kim informed decedent she only treated ear, nose, throat and allergy related symptoms and that decedent would need to see an internist for general medical problems. Dr. Kim's initial diagnosis was allergic rhinitis.

Both doctors initiated treatment of decedent with prescriptions of several medications, both prescribing a form of steroids. The first dose was prescribed by Dr. Wilburn in October 2001 and the second was prescribed by Dr. Kim in November 2001. Decedent continued seeking treatment throughout December. When her condition did not improve, decedent again visited both doctors on 9 January 2002, and was administered an injection of steroids, Celestone, by Dr. Kim and prescribed steroids, Medrol, by Dr. Wilburn. There is no indication that the doctors were communicating or that either was aware that decedent was being prescribed steroids by both physicians. Decedent returned to see Dr. Wilburn in January and February 2002 still complaining of coughing. In February, Dr. Wilburn ordered a chest x-ray along with other radiology tests. The tests revealed that decedent's lungs had patch density which was consistent with infection.

On 18 March 2002, decedent returned to Dr. Kim's office where an examination of her throat revealed a large mass. At this time, Dr. Kim again administered steroid injections. Decedent received the steroid injections from Dr. Kim throughout April 2002 along with a prescription for the steroid Prednisone. In addition, decedent received a prescription for Prednisone, from Dr. Wilburn. Even though previous requests had been made for chest x-rays and blood work from Dr. Wilburn, Dr. Kim did not receive any of these requested reports until 19 April 2002 when she received the results of the tests performed in February by Dr. Wilburn, but still no blood work. This communication on 19 April 2002 was the only communication between the two treating physicians. Decedent again visited Dr. Kim on 2 May 2002 where upon review of the previous test results, Dr. Kim determined a possible lung infection. Steroid injections were again administered, however, the lung infection was not discussed even though Dr. Kim received no indication that it was being treated by Dr. Wilburn.

Decedent's last visit to Dr. Kim's office was on 15 May 2002 where she once more received the steroid treatment because it appeared to be working by decreasing the size of the mass. Dr. Wilburn then saw decedent for the last time on 16 May 2002 when he prescribed an oral steroid with a 20-day course. This was the last time decedent was

seen by a physician. On 24 May 2002 decedent collapsed and died from exsanguination related to pulmonary tuberculosis. Both physicians had failed to detect the tuberculosis.

A verified complaint was filed by the estate of decedent against the two defendants, Dr. Wilburn and Dr. Kim, alleging negligence on the part of both defendants which was the proximate cause of the wrongful death of decedent. Subsequently, an answer and demand for jury trial was filed by Dr. Kim alleging that all treatment was in accordance with the proper standard of care and that her actions were not the proximate cause of decedent's death. An answer also was filed by Dr. Wilburn alleging conformance to the appropriate standard of care and denying that any conduct contributed to this defendant was the proximate cause of decedent's death. Before trial ensued, one defendant, Dr. Wilburn, entered into a release from all liability for the consideration of $1,500,000.00. A voluntary dismissal of all claims with prejudice against Dr. Wilburn was filed by the estate on 8 June 2004.

At trial, both sides presented expert testimony that tended to show both Dr. Wilburn and Dr. Kim failed to act in accordance with the proper standard of care in their communities. Before the trial began, the estate had designated several expert witnesses, some of whom were to testify in regard to Dr. Kim and others in regard to Dr. Wilburn. At trial, one of those expert witnesses, Dr. Steginsky, was called to testify. Dr. Kim on cross-examination wanted to elicit testimony that Dr. Wilburn, the former codefendant, had failed to comply with the proper standard of care. The court excluded this testimony upon objection by the estate. Dr. Kim then conducted *voir dire* of Dr. Steginsky in which the witness was asked whether he had an opinion to a reasonable degree of medical certainty as to whether Dr. Wilburn had breached the applicable standard of care:

> I believe that [Dr. Wilburn] breached the standard of care by not recognizing that an upper lobe infiltrate was possibly consistent with tuberculosis and to do the further appropriate investigation or enlisting the support of a specialist to help reach a timely diagnosis. I further believe that his administration of steroids contributed to the death of [decedent].
>
> I believe that he failed to communicate with Dr. Kim, and his failure to communicate with Dr. Kim led to the over-administration . . . .
>
> . . . .

I believe that his failure to communicate with Dr. Kim also contributed to the co-administration of steroids.

Later in the trial, Dr. Kim was permitted to cross-examine another expert witness of the estate, Dr. Foster, as well as some of her own expert witnesses, Dr. Dave and Dr. Mansfield, who testified that Dr. Wilburn had breached the standard of care and that in fact his actions had fallen far below the standard of care.

At the conclusion of the trial, a charge conference was held in which Dr. Kim requested the court to instruct the jury on insulating negligence. The estate objected to this instruction on the ground that no issue of insulating negligence had been presented by evidence at trial. Dr. Kim acknowledged that insulating negligence had not been pled but stated that it had been raised by the evidence and therefore an amendment should be allowed because it was a substantive issue raised at trial. The court denied the request and excluded any instruction on insulating negligence. Also, at the charge conference Dr. Kim raised several objections to jury instructions regarding proximate cause and joint and several liability. The court in providing the law to the jury, gave several instructions which made reference to the issues of proximate cause and joint and several liability. The first instruction as to proximate cause read:

> [I]n defining proximate cause, there may be two or more proximate causes of an injury. This occurs when separate and independent acts or omissions of different people combine to produce an injury. Thus, if the negligent acts or omissions of two, or even more people for that matter, combine to produce an injury, the injury complained of and ultimate death of [decedent], the conduct of each person would be a proximate cause even though one person may have been more or may have been less negligent than the other.

Immediately following this instruction was the instruction on joint and several liability to which Dr. Kim objected:

> Under joint and several liability, a person may seek to recover his, or her in this case, if you will, amount of damages from only one or two persons he claims is negligent, or he may seek to recover his entire amount of damages from both persons alleged to be negligent. However, regardless of whether the plaintiff seeks to recover damages from one person or from more than one person, plaintiff is only entitled to one recovery of damages.

Thus, the amount awarded as damages is the total amount that the plaintiff can recover from any person. You should not be concerned with how the total amount of damages, if any, which you award, based upon the evidence, may be apportioned among persons who are jointly and severally liable to the plaintiff and whether or not all such persons are defendants at this trial.

After making these two instructions, the trial judge lost his place and repeated the exact instruction on defining proximate cause, *supra*. The court then in a final proximate cause instruction stated to the jury:

Now, there may be one or more proximate causes of an injury; therefore, the plaintiff need not prove that the defendants' negligence was the sole proximate cause of the injury. The plaintiff must prove, by the greater weight of the evidence, only that the defendants' negligence was a proximate cause.

Dr. Kim renewed all objections to the jury charges at the conclusion of the instructions. The jury returned a verdict on 12 May 2004, finding that decedent was injured as a result of the negligence of Dr. Kim and the Associated Allergy Clinic with which she was associated and awarded the estate of decedent $2,000,000.00.

After the verdict was read to the parties, the estate made a motion to tax the costs of the action to Dr. Kim. Dr. Kim made no objection. A judgment of $500,000.00 was entered against Dr. Kim reflecting the $1,500,000.00 credit due to the settlement by Dr. Wilburn on 7 June 2004 by Judge Gary L. Locklear. The estate made a verified motion to tax costs to Dr. Kim setting forth the total costs as $29,283.17 on 1 June 2004. Pre-judgment interest was also calculated in total as $209,097.72 and then an interest credit was given for the amount of interest earned on Dr. Wilburn's settlement, $14,904.24, for a net of $194,193.48. An order was then entered by Judge Gary L. Locklear on 28 June 2004 taxing costs to Dr. Kim.

Dr. Kim now appeals.

## ANALYSIS

### I

**[1]** On appeal Dr. Kim contends that the trial court erred in failing to allow cross-examination of plaintiff's expert as to whether the former codefendant (Dr. Wilburn) acted in accordance with the standard of care. Even assuming *arguendo* that the trial court erred in excluding

this testimony, the error was harmless and unprejudicial and therefore we disagree. Accordingly, we find no error.

N.C. Gen. Stat. § 90-21.12 permits a physician, otherwise qualified under Rule 702 of the North Carolina Rules of Evidence, to testify regarding the applicable standard of care in a medical malpractice case " 'when that physician is familiar with the experience and training of the defendant, and either: (1) the physician is familiar with the standard of care in the defendant's community, or (2) the physician is familiar with the medical resources available in the defendant's community and is familiar with the standard of care in other communities having access to similar resources.' " *Barham v. Hawk*, 165 N.C. App. 708, 712, 600 S.E.2d 1, 4 (2004), *disc. review allowed*, 359 N.C. 410, 612 S.E.2d 316 (2005). Testimony regarding a former codefendant's standard of care is relevant to the issue of proximate cause and not unduly prejudicial. *See Lumley v. Capoferi*, 120 N.C. App. 578, 584, 463 S.E.2d 264, 268 (1995) (stating that evidence of a former codefendant's standard of care is relevant to show that the present defendant's conduct was not the proximate cause of the injury).

However, in considering the issue on appeal, we must consider whether the error was harmless. "The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." *Suarez v. Wotring*, 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002), *disc. review denied*, 357 N.C. 66, 579 S.E.2d 107 (2003). The denial of Dr. Steginsky's testimony in regard to Dr. Wilburn's compliance with the standard of care is juxtaposed with testimony by several other experts for both Dr. Kim and the estate consisting of evidence of tantamount substance and is therefore harmless. *See State v. Richardson*, 341 N.C. 658, 462 S.E.2d 492 (1995) (any error in exclusion of evidence is harmless where evidence of the same import was admitted through the testimony of other witnesses). It cannot be said that a different outcome would have resulted. Therefore, this assignment of error is overruled.

II

[2] Dr. Kim also contends that the trial judge erred in failing to instruct the jury on insulating negligence and further that the jury instructions were misleading. We disagree.

Failure to plead an affirmative defense ordinarily results in waiver thereof. The parties may, however, still try the issue by express or implied consent. *See Nationwide Mut. Insur. Co. v.*

*Edwards*, 67 N.C. App. 1, 6, 312 S.E.2d 656, 660 (1984). N.C. Gen. Stat. § 1A-1, Rule 15(b) provides, in pertinent part: "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Our Supreme Court discussed the application of N.C. Gen. Stat. § 1A-1, Rule 15(b) as follows:

> [T]he implication of Rule 15(b) . . . is that a trial court may not base its decision upon an issue that was tried inadvertently. Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue.

*Eudy v. Eudy*, 288 N.C. 71, 77, 215 S.E.2d 782, 786-87, *overruled on other grounds, Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982); *Mobley v. Hill*, 80 N.C. App. 79, 81, 341 S.E.2d 46, 47-48 (1986).

However, where the evidence which supports an unpleaded issue also tends to support an issue properly raised by the pleadings, no objection to such evidence is necessary and the failure to object does not amount to implied consent to try the unpleaded issue. *Munchak Corp. v. Caldwell*, 37 N.C. App. 240, 246 S.E.2d 13, *cert. denied*, 295 N.C. 647, 248 S.E.2d 252 (1978). Insulating negligence is " 'a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote.' " *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 236, 311 S.E.2d 559, 566 (1984) (citation omitted). "It is not to be invoked as determinative merely upon proof of negligent conduct on the part of each of two persons, acting independently, whose acts unite to cause a single injury." *Id.*

Upon review of the entire record on appeal and transcript, it is apparent that all of the evidence presented at trial tended to support the properly pled issues of proximate cause and joint and several liability. The gravamen of Dr. Kim's argument is that she would have preferred the jury to interpret the evidence presented at trial in her favor, finding that Dr. Wilburn's negligence was the proximate cause of Mrs. Boykin's death rather than her own negligence. Insulating negligence was not pled in this case by Dr. Kim and it is not evident from the record that both parties understood this issue to be tried by implied consent. Where the evidence tended to show independent acts of negligence by two parties which united to cause a single injury, the doc-

trine of trial by implied consent should not have been invoked in this instance and there was no error in excluding an instruction on insulating negligence. *See State v. Cummings,* .346 N.C. 291, 488 S.E.2d 550, *cert. denied,* 522 U.S. 1092, 139 L. Ed. 2d 873 (1998) (stating that the trial court need only give a requested instruction which is supported by the evidence).

**[3]** Dr. Kim further contends that the jury was misled by the instructions on the law regarding proximate cause and joint and several liability.

On appeal, this Court considers a jury charge contextually and in its entirety. *Jones v. Development Co.,* 16 N.C. App. 80, 86, 191 S.E.2d 435, 439, *cert. denied,* 282 N.C. 304, 192 S.E.2d 194 (1972). The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . ." *Id.* at 86-87, 191 S.E.2d at 440. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. *Robinson v. Seaboard System Railroad,* 87 N.C. App. 512, 524, 361 S.E.2d 909, 917, *disc. review denied,* 321 N.C. 474, 364 S.E.2d 924 (1988). "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.*

In the instant case, all of the jury instructions regarding proximate cause which were objected to came directly from the North Carolina Pattern Jury Instructions.[1] It cannot be said that it was error for the judge to state the law correctly to the jury nor that it was error for the judge to mistakenly repeat the correct law to the jury. *See State v. Orr,* 260 N.C. 177, 132 S.E.2d 334 (1963) (stating that an inadvertent mistake by the trial judge, which is later corrected, is harmless error).

Also, in instructing the jury on joint and several liability and its impact on damages, it cannot be shown that taken in context with the entire charge, it misled the jury. The instruction given by the judge was:

Under joint and several liability, a person may seek to recover his, or her in this case, if you will, amount of damages from only one

---

1. The proximate cause instructions were taken directly from N.C.P.I.—Civil 102.27 and N.C.P.I.—Civil 102.19, respectively.

or two persons he claims is negligent, or he may seek to recover his entire amount of damages from both persons alleged to be negligent. However, regardless of whether the plaintiff seeks to recover damages from one person or from more than one person, plaintiff is only entitled to one recovery of damages. Thus, the amount awarded as damages is the total amount that the plaintiff can recover from any person. You should not be concerned with how the total amount of damages, if any, which you award, based upon the evidence, may be apportioned among persons who are jointly and severally liable to the plaintiff and whether or not all such persons are defendants at this trial.

This was a case of complex medical issues in which throughout the trial, allusions were made to another doctor's negligence. It was only fair that the judge give an instruction on how to treat the allusions to this ever-looming, non-present figure in regard to damages. We conclude that, taken in their entirety, the jury charges were not misleading to the jury. Therefore, this assignment of error is overruled.

### III

**[4]** Lastly, Dr. Kim contends that the trial judge erred in requiring Dr. Kim to pay all pre-judgment interest and costs. We disagree.

In the instant case, Dr. Kim failed to make any objection on the record as to the imposition of costs and pre-judgment interest or the apportionment thereof. Therefore, the assignment of error was not preserved. *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005); N.C. R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make . . . ."). However, assuming *arguendo* that the error was preserved for appeal, this Court finds no error.

A release of one liable party in a wrongful death action reduces the claim against the remaining parties to the extent of the amount of consideration paid for the release. N.C. Gen. Stat. § 1B-4(1) (2003). In addition, the release discharges the former party from all contribution liability as to the remaining parties. N.C. Gen. Stat. § 1B-4(2). After the jury renders a verdict against a party, a judge must then determine and render the final judgment. *See Hieb v. Lowery*, 344 N.C. 403, 410, 474 S.E.2d 323, 327 (1996). It is clear and unambiguous that "judgment," given its plain meaning, "indicates the final amount

of money due to the plaintiff, consisting of the verdict, costs, fees, and interest." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 896 (1998). Further, N.C. Gen. Stat. § 24-5 mandates that the "portion of money judgment designated by the fact finder as compensatory damages bears interest." N.C. Gen. Stat. § 24-5(b) (2003).

This Court must give the language of a statute its plain and ordinary meaning where the words chosen by the legislature to comprise the law are clear and unambiguous. *See Hyler v. GTE Products Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993). In construing the statutes *in pari materia*, the entire amount of compensatory damages bears interest, rather than the "compensatory portion *minus settlements*." *Brown*, 349 N.C. at 523-24, 507 S.E.2d at 896. Dr. Kim argues that costs and pre-judgment interest should be apportioned pro rata, however, the plain meaning of the statute does not support this. It is clear that pre-judgment interest is to be awarded before a set-off is given for the settlement amount. *See Brown*, 349 N.C. 520, 507 S.E.2d 894 (holding pre-judgment interest is to be determined on the entire amount of compensatory damages and then reduced by the amount of interest which would have accrued at present value on the settlement amount determined before trial)[2]. It would be contrary to the plain meaning of the statute to determine that N.C. Gen. Stat. § 1B-4 allows the settling party to be liable beyond the amount of consideration set forth in the release. Where the trial court determined costs and interest before entitling the party defendant, Dr. Kim, to set-off, any remaining balance on the judgment was the proper amount for which Dr. Kim is liable. We find no error.

Accordingly, we find no error in the exclusion of testimony by Dr. Steginsky in regard to Dr. Wilburn's standard of care, exclusion of the jury instruction on insulating negligence or the jury instructions as a whole, and we also find no error in the taxing of costs and interests to defendant.

No error.

Judges McGEE and JACKSON concur.

---

2. The case stated as a matter of policy that pre-judgment interest was to compensate the plaintiff for the loss of use of plaintiff's money and that where a plaintiff had no loss of use of money which was awarded by settlement before trial, the defendant party at trial was entitled to a set-off for interest on the portion of the award already paid to the plaintiff.