BARKER INDUSTRIES, INC., PLAINTIFF v. ROBIN O. GOULD, AND GOULD INDUSTRIES, INC., DEFENDANTS

No. COA00-683

(Filed 16 October 2001)

**1. Trials— continuance to obtain counsel—denied—no abuse of discretion**

The trial court did not abuse its discretion by refusing to grant defendants an additional continuance to obtain counsel where the court had granted defense counsel's motion to withdraw four months before trial was scheduled to begin and had given defendants a thirty-day stay and a one day continuance on the day of trial.

**2. Trade Secrets— breadth of injunction—attempt to evade more specific order**

An order granting injunctive relief against defendant Gould was not overly broad where the order permanently enjoined the manufacture or sale of all inorganic or oregano-metallic chemical compounds in an action arising from defendant's use of a prior employer's information. It is apparent that the trial court felt it necessary to broaden the injunctive relief from an earlier, more specific order, given a history of bad faith and underhanded dealing which indicated that defendants would continue to try to evade the court's order. Moreover, defendants had no skills in this area apart from the trade secrets misappropriated from plaintiff.

### 3. Trade Secrets— misappropriation–damages

The trial court did not err in the amount of compensatory damages it awarded in a trade secret misappropriation action where defendants complained that the court's figures did not take into account defendants' costs but presented no evidence as to those costs.

### 4. Trade Secrets— attorney fees—findings as to calculation

The trial court erred in an award of attorney fees in a trade secret misappropriation action by not making findings as to how the award was calculated. N.C.G.S. § 66-154(d).

Appeal by defendants from judgment entered 30 November 1999 and 26 January 2000 by Judge Claude S. Sitton in Mecklenburg County Superior Court. Heard in the Court of Appeals 16 May 2001.

*Bishop, Capitano & Abner, P.A., by J. Daniel Bishop and A. Todd Capitano, for plaintiff-appellee.*

*Weaver, Bennett & Bland, P.A., by Howard M. Labiner and Joseph T. Copeland, for defendant-appellants.*

CAMPBELL, Judge.

Defendants appeal from two orders of the trial court: (1) order dated 30 November 1999, enjoining defendant Robin O. Gould ("Gould") and his company, defendant Gould Industries, Inc. ("Gould Industries"), from all operations, ordering that the business be permanently closed, and awarding both compensatory and punitive damages, and (2) order dated 26 January 2000, denying defendants' motions for new trial, amendment of judgment, relief from judgment, and stay of enforcement of judgment.

Plaintiff Barker Industries, Inc., owned by Marc and Robert Settin, is a manufacturer of high grade, inorganic and organo-metallic chemical compounds. Plaintiff supplies its customers with high quality, high purity compounds which it has successfully researched and manufactured over the past twenty-five years. Plaintiff has also established close relationships with its suppliers to ensure quality raw materials, and has built a solid customer base, even sometimes working with its customers to tailor its products to the customers' specific needs.

In 1993, plaintiff hired defendant Gould to perform clerical work for the company. Gould's duties included recording customer orders

and placing orders for the needed supplies and raw materials. Gould was not engaged in actually manufacturing chemicals, and had no background or training in this area. Sometime before his termination in October of 1997, Gould began making copies of plaintiff's customer, supplier, and pricing lists; compiling this information in what became known as the "Address Book." Gould also made copies of plaintiff's "prep sheets," which contained the precise product formulations for the chemicals plaintiff manufactured. These "prep sheets" were the result of refinements made over the years that allowed for the high purity of the products, and could only be found on Robert Settin's password-protected computer.

After his termination, Gould began manufacturing inorganic and organo-metallic compounds in direct competition with plaintiff, using the information Gould had taken from plaintiff. Gould Industries obtained raw materials from plaintiff's suppliers, and attempted to sell its products to plaintiff's customers. Plaintiff sought to enjoin defendants' activities, and brought suit for injunctive relief and damages.

[1] Defendants' first contention is that the trial court erred by not allowing defendants a second continuance in order to obtain counsel for the 11 November 1999 proceeding. We disagree.

The decision to grant or deny a continuance is subject to the trial court's discretion, and will not be overturned absent an abuse of that discretion. *State v. Call*, 353 N.C. 400, 415, 545 S.E.2d 190, 200 (2001). Despite defendants' contention, it is apparent from the record before us that defendants were fully aware their counsel had filed a motion to withdraw, that this motion had been granted by the trial court a full four months before the trial was scheduled to begin, and that the trial court had given defendants ample opportunity to obtain counsel— including a thirty day stay of the proceedings to enable defendants to retain counsel, and a one day continuance on the day of trial when defendants announced that their attorney was not able to attend court on that day. Therefore, we conclude the trial court did not abuse its discretion by refusing to grant defendants an additional continuance in order to obtain counsel.

[2] Defendants' next set of contentions involve the 30 November 1999 order. First, defendants argue that the injunctive relief ordered by the court against defendant Gould, permanently enjoining him from the manufacture or sale of inorganic or organo-metallic chemical compounds is over broad. In support of this argument, defendants

state several factors that should be considered in tailoring injunctive relief. We review each of these factors under an abuse of discretion standard. *Roberts v. Madison County Realtors Ass'n, Inc.*, 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996) ("When equitable relief is sought, courts claim the power to grant, deny, limit, or shape that relief as a matter of discretion.").

To begin, defendants assert that our courts are wary of prohibiting "an employee from working in his field of training even if the employee's general skills and knowledge were acquired in the course of his employment," citing *Engineering Associates, Inc. v. Pankow*, 268 N.C. 137, 139, 150 S.E.2d 56, 58 (1966), for this proposition. Gould, however, was hired by plaintiff to do clerical work. He was studying to be a certified public accountant. His "field of training" at no time included manufacturing chemicals. Gould never received any sort of training in this field, held no chemistry degrees, and was never taught these skills by plaintiff during his employment. Accordingly, we hold the trial court did not prevent defendant Gould from working in his "field of training," and therefore did not abuse its discretion.

Next, defendants assert that the injunctive relief granted by the trial court was too broad, and that instead, the relief should be "limited to specific items or information and not be a widely encompassing order." Defendants' apparent objection here, is that the order permanently enjoined Gould from "the manufacture or sale of inorganic or organo-metallic chemical compounds" without listing specific compounds, thereby effectively enjoining defendants from the manufacture of any such compound. Defendants contend a much more reasonable approach would have been to enjoin the manufacture of the twenty-seven compounds listed on the "prep sheets" obtained by Gould. Again, we find no abuse of discretion on behalf of the trial court.

Defendants here are solely responsible for their plight by actively ignoring the terms of the preliminary injunction against them. In the preliminary injunction, the trial court stated: "Defendants Robin O. Gould and Gould Industries, Inc. shall not manufacture or sell any of the specialized chemical compounds whose formulation information was taken by Gould in the form of Prep Sheets. Attached as Exhibit A hereto is a list of those products." Exhibit A goes on to list the twenty-seven specific chemicals that defendants were prohibited from manufacturing. Then the trial court further ordered that: "Defendants Robin O. Gould and Gould Industries, Inc. shall not sell other prod-

ucts currently marketed by Barker to Barker's customers whose identities and purchasing habits are recorded on the address book compiled by Gould. . . . Attached as Exhibit C hereto is a list of those customers."

The trial court took great care in setting out the specific chemicals, customers, and suppliers to which the preliminary injunction applied. However, defendants tried to evade the trial court's order by adding trace amounts of chemicals to the compounds (which would not affect the compound's performance), then claiming that they were not the same chemicals covered by the preliminary injunction, and by selling to affiliates of plaintiff's customers instead of selling directly to the customers themselves. This is evidenced by the trial court's findings of fact in its supplemental preliminary injunction, where it found defendants had sold chemicals that were "either identical or insubstantially distinct" from chemicals it had been enjoined from manufacturing in the preliminary injunction, and that defendants sold its products to a customer that was affiliated with a prior Barker customer. In fact, the Barker customer and its affiliate shared the same telephone number, and the chemicals sold to the affiliate were sold at the same price, and in the same amount, as the chemical defendants had been enjoined from selling to the original Barker customer. The trial court also found that defendants were operating a website listing for sale many of the chemicals defendants were enjoined from manufacturing. We therefore find no abuse of discretion on the part of the trial court in enjoining Gould from the manufacture or sale of inorganic and organo-metallic compounds.

Defendants' last argument against the injunction is that defendants cannot be enjoined from the manufacture of products that differ from those that plaintiff manufactures. Defendants assert that the chemicals they produced were of an "industrial grade," and that plaintiff sold only the highest purity chemicals, and would not produce lower quality products. Nevertheless, we conclude the trial court was within its discretion to enjoin Gould as it did.

We note that broad injunctive relief is available where there has been some showing of bad faith or underhanded dealings on the part of the party to be enjoined, or where the party plainly lacks comparable skills so that misappropriation can be inferred. *FMC Corp. v. Cyprus Foote Mineral Co.*, 899 F.Supp. 1477, 1482 (W.D.N.C. 1995). It is also " 'well settled that an injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential informa-

tion.' " *Barr-Mullin, Inc. v. Browning,* 108 N.C. App. 590, 594, 424 S.E.2d 226, 229 (1993) (quoting *Travenol Laboratories, Inc. v. Turner,* 30 N.C. App. 686, 692, 228 S.E.2d 478, 483 (1976)).

It is apparent that the trial court felt it necessary to broaden the injunctive relief, given the defendants' past history. As noted above, after the preliminary injunction was filed, defendants added trace amounts of chemicals to their products and sold them to affiliates of plaintiff's customers in an attempt to evade the trial court's order. In fact, the trial court expressly stated in the supplemental preliminary injunction, that "[u]nless more expansively restrained, Gould and Gould Industries will continue to use Barker's own trade secrets to its irreparable injury," whereupon it added additional restraints to the preliminary injunction.

Nonetheless, even with full knowledge of the preliminary injunction and the more restrictive supplemental preliminary injunction, defendants continued to avail themselves of plaintiff's trade secrets by manufacturing and selling the enjoined products to plaintiff's customers from whom defendants had been expressly banned. Not only does this show bad faith and underhanded dealings, but it shows that defendants would very likely continue to try to evade the trial court's order. Further, as defendants had no skills in this area apart from the trade secrets Gould misappropriated from plaintiff, the trial court's broad injunctive relief was well within its discretion to award, and did not constitute an abuse of that discretion.

[3] Defendants next find fault with the amount of compensatory damages awarded by the trial court in its 30 November 1999 order. The trial court awarded plaintiff $72,666.30 in compensatory damages due to unjust enrichment. Under North Carolina's Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 to 66-157 (1999), in addition to injunctive relief, a party may recover actual damages "measured by the economic loss or the unjust enrichment caused by misappropriation of a trade secret, whichever is greater." N.C. Gen. Stat. § 66-154(b) (1999). Defendants contend that the evidence introduced by plaintiff to show unjust enrichment was "factually flawed" because plaintiff did not prove a causal link between the wrong committed and the damages incurred.

To the contrary, our review of the evidence reveals plaintiff provided ample proof that defendants were unjustly enriched due to sales of Barker products to Barker's customers. Plaintiff's exhibit forty-two lists the dates, quantities, prices, and products sold by

**BARKER INDUS., INC. v. GOULD**

[146 N.C. App. 561 (2001)]

defendants to plaintiff's customers. The net result of those sales was income to defendants in the amount of $72,666.30, and it is evident that these sales were a direct result of Gould's misappropriation of plaintiff's trade secrets. Although defendants complain that the unjust enrichment figures did not take into account defendants' manufacturing, sales, and shipping costs, defendants presented no evidence as to these costs. Therefore, we conclude the trial court did not err in awarding compensatory damages in the amount of $72,666.30.

**[4]** Defendants' last assignment of error regarding the 30 November 1999 order, is that the trial court erred in its additional award of $19,000.00 in attorneys' fees to plaintiff. Although N.C. Gen. Stat. § 66-154(d) (1999) does authorize the trial court to award reasonable attorneys' fees if a "willful and malicious misappropriation exists," the trial court must still make sufficient findings of fact regarding how the award was calculated. "[I]n order for the appellate court to determine if the statutory award of attorneys' fees is reasonable, the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *United Laboratories, Inc. v. Kuykendall*, 102 N.C. App. 484, 494, 403 S.E.2d 104, 111 (1991). In the case *sub judice*, however, it is unclear from the record how the trial court arrived at this figure. It is therefore necessary to remand this issue to the trial court for proper findings.

Defendants' final assignments of error involve the 26 January 2000 order of the trial court, denying defendants' motions for new trial, amendment of judgment, relief from judgment, and stay of enforcement of judgment. These motions were based on the same issues as the preceding assignments of error. Having found no error at the trial level, and having remanded the issue of counsel fees for further findings by the trial court, we find these assignments of error to be without merit.

Affirmed in part and remanded in part.

Judges BIGGS and SMITH concur.