SUNBELT RENTALS, INC. v. HEAD & ENGQUIST EQUIPMENT, L.L.C., 2003 NCBC 6 (7/31/03)

NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
00-CVS-10358

SUNBELT RENTALS, INC., a North Carolina corporation,

Plaintiff,

v.

HEAD & ENGQUIST EQUIPMENT, L.L.C., d/b/a HI-LIFT, ROBERT HEPLER, DOUGLAS KLINE, MICHAEL QUINN, GREGG L. CHRISTENSEN, PATRICK C. MULDOON, MICHELE U. DOUGHERTY and BRIAN W. PEARSALL,

Defendants.

## ORDER AND OPINION ON MOTION FOR ATTORNEYS' FEES

{1}     This matter is before the Court on Plaintiff's Motion for Attorneys' Fees pursuant to N.C.G.S. § 75-16.1 and N.C.G.S. § 66-154. For the reasons set forth below, the Court awards plaintiff attorneys' fees and expenses of $1,200,000.

*Parker, Poe, Adams & Bernstein, L.L.P., by William L. Rikard, Jr. and Eric D. Welsh, for plaintiff.*

*Helms Mulliss & Wicker, P.L.L.C., by Irving M. Brenner and Paul M. Navarro, for defendants.*

I.

{2}     In its prior order dated May 2, 2003, the Court found that defendants had violated both North Carolina's Unfair and Deceptive Trade Practices Act ("U.D.T.P.A.") and its Trade Secrets Protection Act. ("T.S.P.A."). *See Sunbelt Rentals, Inc. v. Head & Engquist Equipment, L.L.C.*, 2003 NCBC 4 (Mecklenburg  May 2, 2003)(Tennille, J.). Both statutes provide for the award of attorney fees and expenses in the discretion of the Court.  Plaintiff has asked the Court for an award of $1,752,135.90.

{3}     Defendants ask the Court to deny the request in its entirety. Defendants assert that plaintiff cannot show an unwarranted refusal to settle as required by the U.D.T.P.A. They also argue that because part of the conduct the Court found to be wrongful occurred outside the state of North Carolina, this state may not award attorney fees under that statute for their out of state conduct.  It is also argued that the fee request is excessive and unreasonable under the circumstances.

{4}     The Court incorporates herein the findings of fact and conclusions of law contained in the order of May 2, 2003. Those findings included determinations that defendants had misappropriated plaintiff's trade secrets and that their conduct in surreptitiously orchestrating the mass departure of key employees violated the U.D.T.P.A.  The Court found then, and for purposes of this motion finds again,

that the defendants' conduct was willful.

{5}    Cases of this nature typically involve claims which overlap. Certain of the activities in this case supported findings of violations of both statutes, and some of the activities supported violations of the U.D.T.P.A. only. The claims for interference with prospective customer relations involved facts which also related to the unfair trade practice claims. The discovery and trial of the action did not permit easy compartmentalization of the claims. Plaintiff did not prevail on all claims against all defendants, but it did prevail on the key claims giving rise to its right to seek attorney fees.

{6}    In exercising its discretion to award attorney fees in this case, the Court has considered the nature of the defendants' actions, the damage caused by those actions, the benefit received by the defendants from such actions and the fact that from discovery through trial defendants were not forthcoming with respect to the extent of the actions they had taken to compete with plaintiff. The Court has also considered the circumstances giving rise to the departure of Mr. Hepler and Mr. Klein from BPS, and the experience and knowledge they and other employees possessed and could rightfully use to compete in the aerial work platform rental business.

II.

{7}    The Court next turns to the findings required to support the amount of any award of attorney fees. The Court notes at the outset that it was assigned this case close to its inception and thus has detailed knowledge of most of the proceedings, from discovery through trial.

{8}    The Court must consider and make findings with respect to (1) time and labor spent by the attorneys on the case, (2) complexity of the issues, (3) the length and complexity of the trial, (4) the level of experience and ability of each attorney, (5) the skill required,  (6) the hourly rates of the attorneys, (7) comparable rates for similar work and (8) customary fees for similar work. *See, e.g., Barker Indus., Inc. v. Gould*, 146 N.C. App. 561, 567, 553 S.E.2d 227, 231 (2001) ("In order for the appellate court to determine if the statutory award of attorneys' fees is reasonable, the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney."); *Vazquez v. Allstate Insurance Co.*, 137 N.C. App. at 747, 529 S.E.2d at 483 (2000)(upholding award of attorneys fees by trial court as reasonable where the court considered the attorneys' experience, the attorneys' positions within their firms, and comparable hourly rates for attorneys in the Charlotte area); *Barbee v. Atlantic Marine Sales & Service, Inc.*, 113 N.C. App. 80, 86-87, 437 S.E.2d 682, 686 (1993) ("Appropriate findings [regarding reasonableness] include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney…. They [the affidavits] reveal the time spent by the attorneys and their support staffs, the complexity of the trial, the customary hourly fee for each of the attorneys, and the level of experience of each of the attorneys.").     In determining the amount of the fee award, the Court has reviewed the affidavits of Mr. Rikard, Mr. McKeithan and Mr. Brenner filed in connection with this motion, as well as the time records submitted by plaintiff's counsel.

{9}    This was a complex case which involved complicated fact and legal issues. It was fiercely contested, and defendants were represented by experienced counsel. Plaintiff bore the burden of proof on several difficult issues. The trade secret and unfair trade practice claims were difficult to prove and

establish as a matter of law. This was not an average case susceptible to quick or easy proof. It required skillful advocacy by experienced counsel. The case has lasted over three years, involved voluminous document production (too much, in the Court's view); numerous depositions, both in and out of state (too many in the Court's view); expert testimony from both sides (some unnecessary, in the Court's view); extensive motion practice (too much, in the Court's view); and a lengthy bench trial. Defendants sought summary judgment on all the issues. The case took ten days to try without a jury and the parties presented extensive testimony by deposition transcript (some of it unnecessary, in the Court's view) which required attention from both counsel and the Court. Both sides presented extensive post-trial proposed findings and conclusions. Thus, the amount of time and effort required to prosecute this action was understandably extensive.

{10} As has become a familiar pattern in litigation today, the discovery in this action was excessive and some of it unnecessary. That factor entered into the Court's exercise of its discretion. The Court also considered the fact that plaintiff did not prevail on all its claims against all the defendants. Some of the time and expense expended on experts also contributed to the reduction of the fee from the amount requested. While the Court has considered the fact that defendants' counsel expended fewer hours, that factor was not significant in the Court's exercise of its discretion. Plaintiff bore the burden of proof on most issues, and it is understandable that more effort was required of plaintiff's counsel than counsel for the defendants. Plaintiff was required to respond to extensive motions for summary judgment and file motions to compel to obtain some of the discovery sought. This was a case that was less expensive to defend than to prosecute.

{11} The Court has considered the skill required to try this case and the skill demonstrated by plaintiff's counsel and finds both to be significant. Defendants were represented by skilled and competent counsel who contested the claims vigorously and well on their behalf. The case required a high level of skill to prepare and try and plaintiff's counsel demonstrated the necessary skill to prevail. This case also required experienced counsel. The Court has reviewed the level of experience of plaintiff's counsel and finds the blend of experience used by counsel to be appropriate for this type of case. Experienced lawyers were used where necessary and less experienced lawyers and paralegals were used at their appropriate skill level. Plaintiff's counsel were experienced and able and utilized that experience and ability appropriately in this case.

{12} The Court finds that the hourly rates charged are within the range of fees charged by similarly situated and experienced counsel in North Carolina for this type of case. The Court has relied upon the affidavits submitted as well as its own experience in similar types of cases in the Business Court. Specifically, the Court finds the fee ranges set forth below and detailed in Mr. McKeithen's affidavit to be within the range of usual and customary fees in the Charlotte, North Carolina area for the levels of experience of counsel involved.

| Attorney/Paralegal: | Hourly Rate: 2000 | Hourly Rate: 2001 | Hourly Rate: 2002 |
|---|---|---|---|
| William L. Rikard, Jr. | $275.00 | $275.00 | $300.00 |
| Eric D. Welsh | $195.00 | $210.00 | $220.00 |
| Deborah L. Edney | $140.00 | $150.00 | $165.00 |

| | | | |
|---|---|---|---|
| Edward B. Davis | $130.00 | $135.00 | $145.00 |
| Heather N. Oakley | | $115.00 | $125.00 |
| Kristi F. Kessler | $130.00 | $135.00 | $155.00 |
| K. Carter Cook | $145.00 | $145.00 | $150.00 |
| Melanie B. Dubis | $155.00 | $165.00 | $175.00 |
| Connie Hunt | $95.00 | $95.00 | $105.00 |
| Geanne Best | - | - | $75.00 |
| Lisa King | $90.00 | $90.00 | $90.00 |

{13}     Finally, the Court notes that the submission of the time records in the form selected by plaintiff's counsel is not the ideal format and is one that might create problems for fee applications in other situations. Counsel elected to submit the time in quarterly summaries, without providing detailed time records for each attorney. While summaries may be useful in some situations, detailed time records are always more illuminating to the Court.  Since the Court has made other reductions in the requested fee in its discretion and the Court is familiar with the effort that went into the case throughout, the form of submission has not prevented the Court from reaching a decision on this motion. The submissions were adequate for this case under these circumstances but would probably not be sufficient in other cases. Since the Court was familiar with the full range of activities in this case, it was able to make an adequate assessment of the reasonableness, efficiency and economy of counsels' work. More detailed time records would be preferable, if not required, in other cases and circumstances. In this case, the Court does not believe that the submission of more detailed records would change the result.  The Court finds that the hours detailed in plaintiff's counsel's affidavits were devoted to this case and has exercised its discretion in awarding fees for those hours of work.

## III.

{14}     N.C.G.S. § 75-16.1 permits an award of reasonable attorney fees to a prevailing plaintiff if "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of the suit."

{15}     The Court has already found that the defendants consciously and willfully engaged in the acts which constituted the basis of the claim. It now turns to defendants' argument that was no *unwarranted* refusal to *fully* resolve the matter. The case law provides little guidance in interpreting the language of the statute. In interpreting the statute, the court should give the words used their normal and customary meaning.

{16}     While the parties and their counsel tilt with each other with respect to the context and timing of settlement negotiations, two undisputed factors control the Court's determination. First, no offer was ever made by defendants which would have fully resolved the case. No offer was made providing for any monetary compensation for the damage done—certainly no offer which approached the amount of

damages awarded by the Court, even absent treble damages. Nor can defendants argue that they never received an offer to settle in the range of the verdict. Plaintiff made an offer to settle which turned out to be virtually the same amount as the verdict entered after trial. Hence, defendants cannot argue their failure to reach agreement was warranted. They had an offer to settle that would have fully resolved the matter based upon the ultimate verdict. The statute speaks not in terms of negotiation in good faith, but full resolution.

{17} Second, to this day defendants have not acknowledged the extent and true nature of their actions. They have stonewalled and denied committing the acts which the Court found to have occurred. It is difficult to find that defendants, having hidden and denied their actions, made a good faith effort to fully resolve the matter. When combined with their demand to be compensated for their attorney fees, their actions can be characterized as general intractability. Defendants took a business risk with their actions, made no attempt to eliminate that risk by realistic settlement and should not be surprised that they are required to pay attorney fees now that they have lost the case.

{18} Defendants' argument that they would have ceased their actions if only plaintiff had sued earlier to stop them is unavailing. They have yet to acknowledge committing those acts. They reaped substantial benefit from them. To argue now that they would have stopped if plaintiff had sued earlier has a hollow ring and provides no defense under the statute. There is no basis in this record to conclude that defendants were ever prepared to or did offer a monetary settlement commensurate with plaintiff's damages. See, *United Laboratories v. Kuydendall*, 102 N.C. App. 484, 494, 403 S.E.2d 104, 111 (1991) and *Lapierre v. Samco*, 103 N.C. App. 551, 561-62, 406 S.E.2D 646, 651 (1991). That difference in settlement effort differentiates this case from *Llera v. Security Credit Systems Inc*. ,93 F.Supp.2d 674 (E.D.N.C. 2000) relied upon by defendants.

{19} The Court has previously noted that the defendants' actions were carefully timed to take advantage of the period prior to the closing of the BPS/Sunbelt transaction. Every effort was made to hit the key branches in the H&E business plan before Sunbelt officially took over and while BPS was not in a good position to file suit claiming that it was being injured because it was trying to sell the businesses. The haste to get the Charlotte branch open before Sunbelt took over is an excellent example of defendants' efforts. Defendants' claim that they offered to enter into an agreement about hiring after the suit was filed is unpersuasive. By that time, the mission to get the key branches in the business plan had been accomplished and the damage done. Repentance without recompense will not prevent application of the attorney fee provisions of the statute.

{20} Plaintiff is also entitled to recover attorney fees under TSPA. While the unfair trade practice claims were somewhat broader than the trade secret claims, much of the evidence to support both was the same. Plaintiff has established a right to attorney fees for the TSPA violations since the Court has found the misappropriation to be willful. Recovery of attorney fees under TSPA is not conditioned upon a court finding of unwarranted refusal to fully resolve the claims. The Court's fee award encompasses both, but a separate award would be justifiable under TSPA even if an award were not granted under the U.D.T.P.A.

IV.

{21} Finally, the Court addresses the argument raised by defendants that application of the attorneys' fees provision of § 75-16.1 to conduct outside of North Carolina violates due process and is beyond the proper scope of the statute.

## A.

{22}    The Court can discern no difference between the application of the attorney fee provision of the U.D.T.P.A. and application of the other provisions of the act (treble damages for example) to out of state conduct. Indeed, defendants' argument does not differentiate the attorney fee provisions or single them out for any special treatment. Defendants raise for the first time in this case a constitutional argument that North Carolina's U.D.T.P.A. cannot validly reach the out of state conduct of defendants. If it cannot reach those actions for purposes of attorney fees, surely it could not reach them to create liability in the first instance. Defendants seek to raise this defense, which they have affirmatively eschewed in the past, post trial. Throughout all the pretrial proceedings in this case, including summary judgment motions and motions in limine, defendants never raised any question concerning the applicability of North Carolina's U.D.T.P.A. to their out of state conduct. Those concerns were not raised during trial or in post trial submissions of proposed conclusions of law. Yet, they now argue that the entire act does not apply. Defendants' Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees, p. 7.  To the contrary, they have consistently argued that North Carolina law did apply to their out of state conduct and that they had no liability under North Carolina law. Having erred (at least thus far) in that last conclusion, they now ask the Court to find application of that same law to be unconstitutional. The Court finds and concludes that the defendants waived the defense that the application of the U.D.T.P.A. to their out of state conduct in this case is unconstitutional by their failure to timely present the defense.

## B.

{23}    Even if the defense had been timely raised, it was not a valid defense. A brief review of some of the pertinent facts is helpful here. Plaintiff is a North Carolina corporation which has operations here. Defendant Hi-Lift has operations in North Carolina as well. Defendant Pearsall is a citizen and resident of North Carolina and works in North Carolina for Hi-Lift. His actions were all taken in North Carolina within the course and scope of his employment with Hi-Lift. The actions of the defendants which the Court has found to violate both the U.D.T.P.A. and TSPA were taken as part of a plan to compete with and obtain the business of a North Carolina corporation headquartered and doing business here. The defendants' actions, both in state and out of state, impacted that business here. Further, from the outset, a part of the defendants' plan involved activities directed at plaintiff's employees and customers at its Charlotte branch and was intended to benefit Defendant Hi-Lift's operations in Charlotte. Hi-Lift agents and employees traveled to North Carolina and took action here in connection with their plan. The activities which took place in North Carolina were not isolated activities but part of an overall scheme which was to be executed within a specific time frame. Nor did the branches of either Sunbelt or Hi-Lift operate totally independently. One factor which drove profitability in the work platform business was the ability to move equipment between branches to maximize utilization. Defendant Quinn was a specialist at moving equipment between branches. Further, there were benefits derived from volume purchasing of equipment across branches. Defendants' North Carolina activities were clearly connected to its similar activities in other states. Defendants' contacts with North Carolina were not "incidental" contacts; rather, they were intentional,

systematic, substantial, continuous and part of a company-wide plan. The injury inflicted on a North Carolina business by both in-state and out-of-state conduct was not negligible. It was direct and substantial.

{24}     These facts clearly and plainly distinguish this case from *The 'In' Porters, S.A. v. Hanes Printables, Inc.,* 663 F. Supp. 494 (M.D.N.C. 1987) relied upon by defendants. The *Hanes* case involved a suit based upon North Carolina's unfair trade practice statute by a French company whose distributorship business was situated in France. The breach of contract at issue involved distribution of goods in France. The plaintiff had no operations in North Carolina or the United States. The sole connection with North Carolina was the fact that the defendant parent company, Sarah Lee, had operations in North Carolina. Judge Gordon phrased the issue before him this way: "In deciding defendants' motion to dismiss, the court must determine whether section 75-1.1 is available to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a negligible effect, if any, on North Carolina trade or commerce."  He held that: "Application of the Act in case having only an incidental local effect not only would be contrary to the Fourth Circuit's interpretation of the Act, but also would render the Act constitutionally suspect." Finding that claimed injuries had no substantial North Carolina effects, the claims were dismissed as not being within the contemplated reach of § 75-1.1. Judge Gordon also noted that the North Carolina Act was patterned after federal antitrust laws and that he had found that the federal antitrust laws did not reach the conduct in question. *The 'In' Porters, S.A. v. Hanes Printables, Inc.,* 663 F. Supp. 494 (M.D.N.C.) at 503.

{25}     This case is clearly within the reach of § 75-1.1, and the effects on a North Carolina company from both in-state and out-of-state acts are substantial. The implications of restricting recovery under the U.D.T.P.A. to in-state acts in this instance are unappealing from the standpoint of judicial economics. Defendants engaged in one course of conduct and had a business plan which impacted plaintiff's business in a number of states. To require plaintiff to file suit on the same conduct in seven states is neither economical or efficient use of judicial resources. Res judicata issues would abound, as would the possibility of inconsistent verdicts. Of all the states in which defendants' activities took place, North Carolina is the most logical jurisdiction to resolve the parties' disputes.

{26}     It is clear from the federal court opinions that the application of North Carolina's U.D.T.P.A. is reviewed on a case by case basis to determine if, under the circumstances of a particular matter, the burden on interstate commerce is excessive in relation to North Carolina's local interests. Based upon its findings in the order of May 2, 2003 and the specific findings set forth above, this Court has concluded that applying the Act to defendants' out-of-state conduct does not constitute an excessive burden on interstate commerce given the substantial interest of North Carolina in protecting its domestic companies from theft of their trade secrets and unfair competition, particularly where substantial acts were committed in this state and defendant is doing business here. *See Itco Corp. v. Michelin Tire Corp., Commercial Div.,* 722 F.2d  42 (4th Cir. 1983).

## Conclusion

{27}     Plaintiff suffered an injury in North Carolina as a result of defendants' unfair competition which had a substantial effect on its domestic operations. At the time of the injury Defendant Hi-Lift was doing business in North Carolina, and its actions here were part of a coordinated business plan which

involved activity in other states as well as North Carolina. The burden on interstate commerce arising from the application of North Carolina's U.D.T.P.A. and its attorney fee provisions under the circumstances of this case is not excessive in relation to the interests of the state. In any event, defendants waived any such defense by failing to raise it until the post- trial motion for attorney fees.

{28}    The Court, in its discretion, finds an award of $1,200,000 for fees and expense to be fair and reasonable under the circumstances. The award is based upon the time expended by counsel, their skill and experience, the complexity and difficulty of both the factual and legal issues in the case and the results obtained. Defendants willfully engaged in the acts giving rise to liability under the statute, and there was an unwarranted refusal to fully resolve the matter.

{29}    Counsel for plaintiff shall submit within ten days a proposed Judgment in accordance with this order and the Court's order of May 2, 2003.


SO ORDERED, this the 31st day of July 2003.