Next Advisor Continued, Inc. v. LendingTree, Inc., 2017 NCBC 51.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 21379

NEXT ADVISOR CONTINUED, INC.,

Plaintiff,

v.

LENDINGTREE, INC. AND
LENDINGTREE, LLC,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**[1]

1.　**THIS MATTER** is before the Court upon Defendants LendingTree, Inc. and LendingTree, LLC's (together "LendingTree" or "Defendants") Motion for Partial Summary Judgment (the "Motion") in the above-captioned case.  Having considered the Motion and supporting documents, the briefs in support of and in opposition to the Motion, appropriate matters of record, and the arguments of counsel at the April 13, 2017 hearing on the Motion, the Court hereby **GRANTS** the Motion.

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher G. Smith, Susan H. Hargrove, and Isaac Linnartz, for Plaintiff Next Advisor Continued, Inc.*
>
> *Moore & Van Allen PLLC, by Jonathan M. Watkins, Scott M. Tyler, M. Cabell Clay, Thomas D. Myrick, Russell F. Sizemore, and Glenn E. Ketner, III, for Defendants LendingTree, Inc. and LendingTree, LLC.*

Bledsoe, Judge.

---

[1] To protect LendingTree's confidential business information, this Opinion has been redacted. An original, unredacted version of this Opinion was filed under Seal on June 9, 2017 and is available, as necessary, for any appellate process.

# I.

## INTRODUCTION

2.     The core of this dispute is Plaintiff Next Advisor Continued, Inc.'s ("Plaintiff" or "Next Advisor")[2] contention that "[a]fter acquiring Next Advisor's confidential information, and Trade Secret Information [through the parties' non-disclosure agreement entered into to facilitate negotiations concerning Defendants' potential acquisition of Next Advisor], [Defendants] began to develop new content and promote that content heavily on [the channels that Next Advisor confidentially had disclosed as [its] most productive revenue channels]" and "revolutionized [their] entire credit card marketing strategy." (Compl. ¶ 23.) Defendants vigorously dispute Next Advisor's allegations and deny all liability on Next Advisor's claims.

# II.

## PROCEDURAL HISTORY

3.     Next Advisor initiated this action in Mecklenburg County Superior Court on November 6, 2015, seeking injunctive and monetary relief, including punitive damages, against Defendants for alleged breach of a non-disclosure agreement, misappropriation of trade secrets under N.C. Gen. Stat. §§ 66-152 *et seq.*, and unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. (*See generally* Compl.)

4.     After a period of discovery, Next Advisor moved for a preliminary injunction on April 11, 2016 (the "P.I. Motion"). The Court held an evidentiary hearing on the P.I. Motion on June 21, 2016.

---

[2] Until June 22, 2016, Plaintiff's corporate name was Next Advisor, Inc.

5.     On June 29, 2016, the Court issued a preliminary injunction (the "P.I. Order") barring Defendants and those acting in concert with them from "using or disclosing the confidential and trade secret information that Defendants obtained from Next Advisor pursuant to the Mutual Non-Disclosure Agreement dated November 20, 2014" (the "NDA"), and barring such actors from, "engaging in paid credit card content marketing by placing credit card advertisements through any content marketing company" through and until the conclusion of this civil action, and unless and until ordered otherwise by the Court.[3]  (P.I. Order ¶ 73 (a)–(b).)

6.     In November 2016, Defendants acquired Iron Horse Holdings, LLC, which does business as CompareCards ("CompareCards").  Defendants subsequently sought clarification concerning whether the restrictions in the P.I. Order extended to CompareCards, whereupon, after a telephone conference and full briefing, the Court held a hearing on December 16, 2016, at which all parties were represented by counsel.  After considering the arguments of counsel, the Court issued an Order on December 22, 2016, concluding "that CompareCards, is acting in concert or participation with Defendants, and based on CompareCards' [future business plans as presented by Defendants,] intends to act in concert or participation with Defendants, and as such, is subject to the [P.I. Order]."  (Order on Defs.' Mot. Clarify Prelim. Inj. ¶ 10.)

---

[3] The P.I. Order was first filed under seal on June 29, 2016 so that the Court could determine whether the parties contended that any portion of the Order contained confidential business information that should remain under seal.  After no objections were made, the Court refiled the P.I. Order on the public docket in its entirety without redactions on July 6, 2016.

7.     On February 20, 2017, Defendants moved for partial summary judgment, contending that judgment should be entered as a matter of law establishing that Plaintiff is not entitled to either (i) compensatory damages or (ii) injunctive relief extending after January 2, 2018.

8.     The Court held a hearing on the Motion on April 13, 2017, at which all parties were represented by counsel.  The time for briefing, arguments, and further submissions has now passed, and the Motion is ripe for resolution.

III.

FACTUAL BACKGROUND

9.     While findings of fact are not necessary or proper on a motion for summary judgment, "it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010) (quotations and citation omitted).  Therefore, this Court limits its factual recitation to the undisputed material facts necessary and helpful to decide the Motion, and not to resolve issues of material fact.

10.     Erik Larson ("Mr. Larson") is the founder of Next Advisor and was Next Advisor's CEO at all times relevant to this dispute.  (Second Larson Aff. ¶ 1.)

11.     Next Advisor's business involved using sponsored ads on popular websites that when clicked took the viewer to Next Advisor's blog, which contained editorial content intended to drive consumers to apply for credit cards.  (First Larson Aff. ¶ 1; Second Larson Aff. ¶¶ 5–6.)  Credit card issuers paid Next Advisor when a consumer

applied and was approved for a credit card through the Next Advisor webpage. (First Larson Aff. ¶ 1.)

12. LendingTree is an online marketer and advertiser of loan and credit products. (DiToro Aff. ¶ 4.)

13. Beginning in the fall of 2014 and continuing through the spring and summer of 2015, Next Advisor and Defendants engaged in discussions exploring Defendants' potential acquisition of Next Advisor. (First Larson Aff. ¶ 2.)

14. This dispute arose after those acquisition negotiations failed in the summer of 2015. (First Larson Aff. ¶¶ 5–7.) As noted above, this litigation commenced in November 2015.

15. Several months later, on May 5, 2016, Next Advisor and Bankrate, Inc. ("Bankrate") executed an Asset Purchase Agreement (the "APA"), by which Bankrate agreed to purchase substantially all of Next Advisor's assets. (Defs.' Mot. Partial Summ. J. Ex. A, hereinafter "APA".) Bankrate's purchase of Next Advisor's assets closed on June 17, 2016. (Defs.' Mot. Partial Summ. J. Ex. G, 6/21/16 Hr'g Tr. (Larson) 51:11–20.)

16. Of particular relevance to Defendants' Motion, the APA provided for the purchase of all of Next Advisor's confidential information and intellectual property, (APA 11, § 2.1(a)(viii)), which included all trade secrets and proprietary information, (APA 6–7, § 1.1; Defs.' Mot. Supp. Partial Summ. J. Ex B, Litigation Agreement, hereinafter "Litig. Agmt."). However, the APA expressly excluded "Seller's claims presently alleged as of the date of [the APA] in the litigation described in Schedule

2.1(b)(viii)[.]" (APA 13, § 2.1(b)(vii).) The excluded claims set forth in Schedule 2.1(b)(viii) specifically included:

> 4. The claims of Seller in, but not the Intellectual Property (and any other rights thereto) alleged in, *Next Advisor v. LendingTree, Inc. and LendingTree, LLC* (Civil Action No. 15-CVS-20775), filed in the State of North Carolina, County of Mecklenburg, General Court of Justice Superior Court Division.

(APA App. 3.)

17. In addition to upfront consideration of $79.25 million, the APA provided an opportunity for Next Advisor to earn up to $145.7 million in additional compensation over an eighteen-month period if Bankrate were to achieve certain performance targets (the "Earnout"). (APA 18–19, § 2.6.) It is undisputed that the APA provides that the eighteen-month period (the "Earnout Period") expires on January 2, 2018. (APA 19, § 2.6(a)(vii).)

18. Since the Bankrate acquisition, Next Advisor has had no continuing credit card or marketing operations. (Defs.' Mot. Partial Summ. J. Ex E, Larson 30(b)(6) Dep. 23:11–20, 61:13–14, hereinafter "Larson 30(b)(6) Dep.".)

19. Except to the extent of its interest in the Earnout, Next Advisor does not currently own any trade secrets, and its ownership of confidential information is limited to accounts receivable and bank accounts. (Larson 30(b)(6) Dep. 22:16–23:10; APA; Litig. Agmt.)

20. LendingTree has not generated a profit from its paid credit card content marketing business. (Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 7.) To the contrary, between the initiation of due diligence in late 2014 or early 2015 and the

entry of the P.I. Order, LendingTree had nearly $█████████ in revenue, but over $███████ in expenses, arising from its paid credit card content marketing business. (Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 6 n.3, Ex. 6–8, Defs.' Resp. to Pl.'s Interrogs. No. 18–21; Ex. 3, Ziegler LendingTree 30(b)(6) Dep. 123:5–124:10.)

21.   Next Advisor has not sought to join Bankrate as a party to this litigation, and Bankrate has not sought to intervene or otherwise appear in this case for any purpose.

## IV.

## LEGAL STANDARD

22.   Defendants' Motion seeks entry of summary judgment determining that Plaintiff cannot obtain: (a) compensatory damages; or (b) injunctive relief extending after January 2, 2018.

23.   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting N.C. R. Civ. P. 56(c)). "A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." N.C. R. Civ. P. 56(b).

24.     The moving party bears the burden of showing that no genuine issue of material fact remains to be resolved. *Camalier v. Jeffries*, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). A genuine issue is one "supported by substantial evidence," and "an issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal quotations and citations omitted).

25.     Summary judgment dismissing a party's claim will be granted if the movant can prove "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000).

V.

ANALYSIS

A. Compensatory Damages

26.     Compensatory damages "cover[] all loss recoverable as a matter of right and include[] all damages (beyond nominal damages) other than punitive or exemplary damages." *Dobrowolska v. Wall*, 138 N.C. App. 1, 12, 530 S.E.2d 590, 598 (2000)

(quoting 22 Am. Jur. 2d Damages § 23 (1988)); *see also* Black's Law Dictionary 416 (8th ed. 2004) (defining actual damages as synonymous with compensatory damages). Defendants contend that Plaintiff's admissions,[4] together with the sworn acknowledgments of Mr. Larson, Plaintiff's CEO, founder, and damages expert, and Shirley Webster, Plaintiff's retained damages expert,[5] establish that the undisputed evidence shows that Plaintiff cannot prove with reasonable certainty the amount of Plaintiff's actual losses from Defendants' alleged wrongdoing. (Defs.' Mem. Supp. Mot. Partial Summ. J. 1–2, 5–7.) Based on these admissions and acknowledgments, Defendants seek a ruling that Plaintiff cannot recover compensatory damages on any claim in this action as a matter of law. (Defs.' Mot. Partial Summ. J; Defs.' Mem. Supp. Mot. Partial Summ. J. 8–10.)

---

[4] Plaintiff has conceded the difficulty of calculating Plaintiff's damages with any certainty. (Defs.' Mot. Supp. Mot. Partial Summ. J. Ex. H, 9/29/16 Hr'g Tr. (Smith) 38:11–12 ("[T]here's no more classic demonstration of the difficulty of proving monetary damages."); Pl.'s Mem. Opp'n Defs.' Mot. Stay P.I. Order 7 ("While it is clear that LendingTree's continued competition would harm Next Advisor's efforts to maximize its earnout, it would be extremely difficult to ascertain those damages with any certainty."); Defs.' Mot. Partial Summ. J. Ex. M, Pl.'s Resp. Defs.' Writ of Cert. 33 ("Next Advisor has demonstrated that it will likely suffer significant harm if LendingTree is allowed to use Next Advisor's own information against it in the competitive marketplace. Those damages would be extraordinarily difficult to calculate.").)

[5] Plaintiff's experts have admitted under oath that the damage and harm suffered by Plaintiff due to Defendants' conduct is "unquantifiable," (Defs.' Mot. Partial Summ. J. Am. Ex. F, Larson Expert Dep. 295:12–296:2, 296:20–296:24; *see also* Ex. J, Larson Expert Disclosure 1 (designating Mr. Larson to testify that the harm Plaintiff suffered is "unquantifiable")), and "impossible to calculate . . . with any reasonable certainty[,]" (Defs.' Mot. Partial Summ. J. Ex D, Webster Dep. 15:22–16:3 (hereinafter "Webster Dep."); *see also* Webster Dep. 13:17–23, 16:13–18, 17:23–18:4, 186:1–7, 238:18–22.) Ms. Webster has also testified that she was not aware of any information from which she could quantify with reasonable certainty any damages suffered by Plaintiff. (Webster Dep. 17:23–18:5, 146:5–15.)

27. Although Plaintiff agrees that it is unable to quantify its economic loss or lost profits resulting from Defendants' alleged wrongdoing with reasonable certainty, Plaintiff contends that Defendants have not argued in their Motion against Plaintiff's right to recover nominal damages, actual damages based on unjust enrichment, punitive damages, and attorneys' fees, and thus have failed to meet their initial burden under Rule 56 to show that Plaintiff is not entitled to compensatory damages. (Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 6.)

28. As an initial matter, Defendants' Motion argues that Plaintiff is not entitled to compensatory damages as a matter of law; thus, Defendants' Motion does not address Plaintiff's right to recover nominal damages, punitive damages or attorneys' fees, none of which are in the nature of compensatory damages. *See Dobrowolska*, 138 N.C. App. at 12, 530 S.E.2d at 598. In any event, Defendants clarified at the hearing that they do not seek a ruling concerning Plaintiff's right to seek punitive damages or attorneys' fees on this Motion, and, to the extent Defendants intend the Motion to request a ruling as to Plaintiff's right to recover nominal damages, which is unclear, the Court denies Defendants' Motion based on the record and arguments before the Court at this stage of the litigation.

29. As to Plaintiff's right to seek unjust enrichment damages for Defendants' alleged misappropriation of trade secrets,[6] Defendants have satisfied their initial burden under Rule 56 by pointing to undisputed evidence that Defendants did not

---

[6] Plaintiff has conceded that it cannot show with reasonable certainty economic loss resulting from Defendants' alleged misappropriation. *See supra* ¶ 27; N.C. Gen. Stat. § 66-154(b) ("[A]ctual damages may be recovered, measured by the economic loss or the unjust enrichment caused by misappropriation of a trade secret, whichever is greater.").

earn a profit in their paid credit card content marketing business after execution of the NDA and prior to the entry of the P.I. Order.

30. The courts of this State routinely look to a defendant's profits as the proper measure of unjust enrichment damages on a trade secret misappropriation claim under Chapter 66. For example, in *Medical Staffing Network Inc. v. Ridgway*, the Court of Appeals found that, after a bench trial, the "trial court's use of [defendant's] total revenue as a basis for calculating [plaintiff's] lost profits was too speculative to constitute a proper measure of damages." 194 N.C. App. 649, 660, 670 S.E.2d 321, 330 (2009). Instead, the Court concluded that defendant's profits were the proper measure—either the profit earned by the defendant as a result of the alleged trade secret misappropriation or the profit attributable to a change in the plaintiff's and defendant's relative market share. *Id.* at 661, 670 S.E.2d at 330. *See, e.g.*, *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 239, 752 S.E.2d 634, 652 (2013) (quoting Black's Law Dictionary 1329 (9th ed. 2009) (observing that "[p]rofit is '[t]he excess of revenues over expenditures in a business transaction'").

31. Other North Carolina appellate decisions are to similar effect. *See, e.g.*, *GE Betz, Inc.* 231 N.C. App. at 238, 752 S.E.2d at 652 (holding measure of unjust enrichment damages for trade secret misappropriation is "*the profits garnered by [defendant]*" (emphasis added)); *Potter v. Hilemn Labs., Inc.*, 150 N.C. App. 326, 336, 564 S.E.2d 259, 265–66 (2002) (calculating unjust enrichment damages for trade secret misappropriation by subtracting direct costs from the sales of products using the trade secret); *Barker Indus. v. Gould*, 146 N.C. App. 561, 566–67, 553 S.E.2d 227,

231 (2001) (calculating unjust enrichment damages for trade secret misappropriation as defendants' net income or net sales).

32. Thus, Defendants' proof shifts the burden to Plaintiff under Rule 56 to show at least a *prima facie* case on this issue for trial. Plaintiff contends that it has met its burden by forecasting evidence that Defendants have been unjustly enriched by their alleged misappropriation because Defendants earned substantial revenues, although not profits, from paid credit card content marketing after they gained access to Plaintiff's confidential information and trade secrets. (Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 7–8.) Plaintiff also asserts that Defendants' willingness to suffer a loss on its paid credit card content marketing business, and Defendants' CEO's assertion that this business is the "next significant growth engine for our company," (Bona Aff. Ex. B; Webster Dep. 74:17–77:24, 106:15–108:23; Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. Ex. 11), evidences that the allegedly misappropriated trade secrets have value to Defendants and establishes that Defendants have gained an improper benefit from their wrongful misappropriation.

33. North Carolina law makes plain, however, that Plaintiff's evidence of Defendants' revenues in Defendants' paid credit card content marketing business, but not their profits, is too speculative to provide evidence of Plaintiff's alleged damages on its misappropriation claim to a reasonable certainty. *See, e.g.*, *GE Betz, Inc.* 231 N.C. App. at 238, 752 S.E.2d at 652; *Potter*, 150 N.C. App. at 336, 564 S.E.2d at 265–66; *see generally Med. Staffing Network, Inc.*, 194 N.C. App. at 660–61, 670 S.E.2d at 330 ("[T]he party seeking damages bears the burden of showing that the

amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty.").

34.    Moreover, Plaintiff has not offered any evidence as to the value of the allegedly misappropriated trade secrets or the resulting increase in value of Defendants' paid credit card content marketing business from the alleged misappropriation, and discovery is now closed.  Without more, the Court cannot conclude that Plaintiff has forecast evidence demonstrating its alleged damages with reasonable certainty.  *See, e.g.*, *Med. Staffing Network, Inc.*, 194 N.C. App. at 660, 670 S.E.2d at 330 (holding that "reasonable certainty" requires more than "hypothetical or speculative forecasts").

35.    As such, the Court concludes that the undisputed evidence establishes that Plaintiff has failed to show that it has suffered legally cognizable unjust enrichment damages on its misappropriation claim.

36.    Accordingly, based on the foregoing, the Court concludes that Defendants are entitled to the entry of summary judgment establishing that Plaintiff is not entitled to recover compensatory damages for any of its claims, including any unjust enrichment damages on its misappropriation claim, as a matter of law.[7]

---

[7] Plaintiff relies heavily on *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 555–56 (1988) to support its proposition that its evidence is sufficient to survive summary judgment in light of the equitable nature of unjust enrichment. (Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 7.) Although *Booe* holds that damages for an unjust enrichment claim is the value of the benefit conferred, the Supreme Court concluded in that case that evidence of specific prior payments for similar services provided a basis to calculate damages with reasonable certainty. *Id.* at 571, 369 S.E.2d at 556.  No such evidence has been proffered here.

B. Injunction Duration

37. Although not specifically raised as such in its briefs, Defendants' contention that Plaintiff does not have a protectable interest to justify equitable relief after the Earnout Period expires on January 2, 2018 implicates Plaintiff's standing to pursue injunctive relief after that date. (Defs.' Mem. Supp. Mot. Partial Summ. J. 11.) The Court therefore raised Plaintiff's standing to the parties at the hearing.

38. Defendants argued at the hearing that Plaintiff cannot show an "injury in fact" after January 2, 2018, precluding injunctive relief thereafter, because Plaintiff transferred the alleged confidential and trade secret information to Bankrate under the APA and because the only rights, title, or interests Plaintiff retained in the transferred trade secrets—the Earnout—expires on January 2, 2018. Therefore, Defendants contend that Plaintiff lacks standing and has no interest protectable by an injunction after January 2, 2018.

39. Plaintiff argued in response that the Trade Secret Protection Act ("TSPA") permits the owner of a trade secret at the time of misappropriation to seek equitable relief even after the owner no longer has an ownership interest in the trade secret.

40. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002), and "refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter," *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55,

57 (2002).[8] It requires "that the plaintiff have been injured or threatened by injury or have a statutory right to institute an action." *Bruggeman v. Meditrust Co., L.L.C.*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (quoting *In re Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410 (1986)). As a result, standing is an issue that can be challenged at any time, *Crouse v. Mineo*, 189 N.C. App. 232, 236, 658 S.E.2d 33, 36 (2008), may be raised by the Court *ex mero motu*, *Willowmere Cmty. Ass'n v. City of Charlotte*, 792 S.E.2d 805, 808 (N.C. Ct. App. 2016), and must be addressed before the merits, *In re T.B.*, 200 N.C. App. 739, 742, 685 S.E.2d. 529, 531–32 (2009).

41. The burden is on the party seeking a remedy and invoking jurisdiction to prove its standing for every form of relief sought. *See Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51; *Queen's Gap Cmty. Ass'n v. McNamee*, 2011 NCBC LEXIS 37, at *4 (N.C. Super. Ct. Sept. 23, 2011). Because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51.

42. Standing "most often turns on whether the party has alleged 'injury in fact' in light of the applicable statutes or caselaw." *Neuse River Found.*, 155 N.C. App. at

---

[8] Although "North Carolina courts are not constrained by the 'case or controversy' requirement of Article III of the United States Constitution[,]" North Carolina courts have "refer[red] generally to a party's right to have a court decide the merits of a dispute" as a question of "standing." *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002).

114, 574 S.E.2d at 52. An injury in fact is "an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.]" *Neuse River Found.*, 155 N.C. App. at 114, 574 S.E.2d at 52 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

43.     The TSPA states, in relevant part, that "[t]he owner of a trade secret shall have remedy by civil action for misappropriation of his trade secret." N.C. Gen. Stat. § 66-153. The TSPA affords an "owner of a trade secret" several remedies, including a preliminary injunction and a permanent injunction. N.C. Gen. Stat. § 66-154(a)–(b).

44.     Specifically, the TSPA states that,

> Except as provided herein, actual or threatened misappropriation of a trade secret may be preliminarily enjoined during the pendency of the action and shall be permanently enjoined upon judgment finding misappropriation for the period that the trade secret exists plus an additional period as the court may deem necessary under the circumstances to eliminate any inequitable or unjust advantage arising from the misappropriation.

N.C. Gen. Stat. § 66-154(a). Therefore, under the TSPA, a party has standing to seek injunctive relief if (i) he is the "owner of the trade secret" and "the trade secrets exist" or (ii) he is the "owner of [a] trade secret" that has ceased to exist but where "circumstances [of] . . . inequitable or unjust advantage arising from the misappropriation" persist. The term "[o]wner" is not defined under the TSPA nor has it been defined by the courts of this State. *See generally SCR-Tech LLC v. Evonik Energy Servs. LLC*, 2014 NCBC LEXIS 71, at *1–2 (N.C. Super. Ct. Dec. 31, 2014)

(noting the uncertainty about how our appellate courts will interpret the legislature's choice to restrict misappropriation claims to an "owner").

45. Here, it is undisputed that Plaintiff held all rights, title, and interests in the confidential and trade secret information that is at issue in this litigation, and that Plaintiff transferred those rights, title, and interests to Bankrate on June 17, 2016, retaining only an interest in the confidential and trade secret information to the extent of the Earnout under the APA. Upon the Earnout Period's expiration on January 2, 2018, Plaintiff will cease to have any interest or a stake of any kind in the alleged trade secrets. Indeed, as of that date, Plaintiff will no longer possess any rights, title, or interests in the alleged trade secrets that could be adversely affected by the disclosure or use of those alleged trade secrets or that could be affected or protected by this Court's entry of injunctive relief.

46. As such, the Court concludes that Plaintiff does not have a legally protected interest to support injunctive relief after the Earnout Period expires on January 2, 2018, and, hence, does not have an injury in fact resulting from any alleged misappropriation of trade secrets under the TSPA after that date. *See, e.g.*, *Gen. Elec. Co., v. Int'l Union of Elec., Radio & Mach. Workers*, 47 N.C. App. 153, 158, 266 S.E.2d. 750, 753 (1980) ("A trial court sitting in equity has no powers to issue an injunction when only abstract rights are involved."); *see also Minitube of Am., Inc. v. Reprod. Provisions, LLC*, No. 13-CV-685-JPS, 2014 U.S. Dist. LEXIS 60596, at *29–30 (E.D. Wis. May 1, 2014) (holding that plaintiff lacked standing to obtain injunctive relief where it had no legal interest in the intellectual property after an asset sale).

47. As a result, the Court concludes that Plaintiff lacks standing to seek protection of the alleged trade secrets at issue under the TSPA after the expiration of the Earnout Period on January 2, 2018. Plaintiff has not offered any evidence to persuade the Court to the contrary. *See, e.g.*, *Smith v. Rockingham*, 268 N.C. 697, 699, 151 S.E.2d 568, 570 (1966) (quoting *Pharr v. Garibaldi*, 252 N.C. 803, 815, 115 S.E.2d 18, 27 (1960) ("It is not enough for the plaintiff to allege simply that the commission or continuance of the act will cause him injury, or serious injury, or irreparable injury; but he should allege the facts, from which the court may determine whether or not such injury will result.")); *see also Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003) (quoting *Califano v. Yamaski*, 422 U.S. 682, 702 (1979) ("[Injunctive relief] should be no more burdensome to the defendant than necessary to provide complete relief to plaintiffs.")).[9]

## VI.

## CONCLUSION

48. Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion for Partial Summary Judgment as follows:

a. On the issue of whether Plaintiff is entitled to recover compensatory damages on its claims, Defendants' request for summary judgment is **GRANTED,** and the Court concludes that Plaintiff is not entitled to recover compensatory damages on any of Plaintiff's claims as a matter

---

[9] The Court's ruling addresses Plaintiff's standing and is without prejudice to, and does not affect, whatever rights or remedies may be available to any other person or entity claiming to be an "owner" of some or all of the alleged trade secrets at issue in this litigation.

of law.  To avoid confusion, the Court notes that this ruling is without prejudice to Plaintiff's right to seek, and Defendants' right to challenge, Plaintiff's nominal damages, punitive damages, and/or attorneys' fees, if appropriate, at a later stage of this litigation.

b. On the issue of whether Plaintiff is entitled to injunctive relief continuing after January 2, 2018, Defendants' request for summary judgment is **GRANTED,** and the Court concludes that, unless earlier terminated by the Court, the P.I. Order entered on June 29, 2016 shall extend only through and including January 2, 2018 and Plaintiff shall not be entitled to injunctive relief to protect the alleged trade secrets at issue in this litigation after that date.[10]

**SO ORDERED**, this the 14th day of June, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases

---

[10] Plaintiff contended at the hearing that CompareCards has violated the P.I. Order but has not sought relief by proper means to address this alleged misconduct.  Thus, the Court does not address or consider Plaintiff's contention in its resolution of the Motion.